370 So.2d 68 (1979)
Bonita Louise NICOLODI, Appellant,
v.
HARLEY-DAVIDSON MOTOR COMPANY, INC., Appellee.
No. 78-1089.
District Court of Appeal of Florida, Second District.
April 25, 1979.
*70 John W. Frost, II, and Charles W. Dodson, of Holland & Knight, Bartow, for appellant.
Lynn H. Groseclose and Kingswood Sprott, Jr., of Sprott & Groseclose, Lakeland, for appellee.
DANAHY, Judge.
Two questions are presented in this case. The first is whether the crashworthiness doctrine adopted and applied to an automobile manufacturer in Ford Motor Company v. Evancho, 327 So.2d 201 (Fla. 1976) applies as well to the manufacturer of a motorcycle. The second question is whether recovery in a crashworthiness case may be based on strict liability or breach of implied warranty[1] as well as on negligence. We answer both questions in the affirmative.
Appellee is the manufacturer of a motorcycle on which appellant was riding as a passenger when it collided with a truck. Appellant suffered serious injuries and lost one leg. In this suit appellant seeks to hold appellee liable for failure to provide any safety device on its motorcycle to protect passengers' legs during collisions. Her complaint contains three counts against appellee, one for negligence, one for breach of warranty, and one on grounds of strict liability.
On appellee's motion to dismiss all three counts, the trial judge entered a final order of dismissal in which he ruled that "under the present state of Florida law a motorcycle is not within the conceptual ambit of the crashworthiness doctrine announced in Ford v. Evancho." We hold that the trial judge was in error, and reverse.
The expression "crashworthiness doctrine" is used to describe the holding in the landmark case of Larsen v. General Motors Corporation, 391 F.2d 495 (8th Cir.1968), which was followed by the Florida Supreme Court in Ford Motor Company v. Evancho, supra. In each of these cases recovery was sought for injuries received in an automobile accident resulting from an alleged defect in design which was not a causative factor of the initial accident but increased or brought about injury to the plaintiff in the course of the collision. In Larsen the alleged defect was in the design of the steering assembly, which caused a rearward displacement of the steering shaft on left frontal impact which was much greater than it should have been. In Ford Motor Company v. Evancho the alleged defect was in the design of the front seat track-and-rail mechanism, which failed to lock the front seat, causing the right side of the front seat to be thrown forward when a back seat passenger was thrown against it in a collision.
In each of these cases the automobile manufacturer argued that its duty of reasonable care in the design and construction of an automobile is met when the automobile is safe for its intended use and that "intended use" does not include involvement in an accident. The courts rejected that argument by applying basic principles of negligence. They reasoned that a manufacturer's duty of reasonable care extends to those results which are reasonably foreseeable and involvement in an accident is a reasonably foreseeable use of an automobile; therefore, an automobile manufacturer's duty of reasonable care in the design and manufacture of an automobile must take into consideration the injury-producing effects of an impact. The court in the Larsen case said:
This duty of reasonable care in design rests on common law negligence that a manufacturer of an article should use reasonable care in the design and manufacture of its product to eliminate any unreasonable risk of foreseeable injury. *71 The duty of reasonable care in design should be viewed in light of the risk. While all risk cannot be eliminated nor can a crashproof vehicle be designed under the present state of the art, there are many commonsense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here.
The Larsen court specifically rejected the notion that it was placing automobile manufacturers in a special class, saying "[w]e think the duty of the use of reasonable care in design to protect against foreseeable injury to the user of a product and perhaps others injured as an incident of that use should be and is equally applicable to all manufacturers with the customary limitations now applied to protect the manufacturer in case of unintended and unforeseeable use."
In arguing that the crashworthiness doctrine should not apply to the manufacturer of a motorcycle, appellee proposes a restrictive interpretation of the holdings in Larsen and Evancho. First, appellee says that the courts in those cases placed a duty on the manufacturer of an automobile to provide a means of safe transportation and it is ludicrous to propose that a motorcycle could be made safe. As stated by appellee, "a motorcycle is a motorcycle is a motorcycle, and, because it is what it is, it is inherently not safe to crash in." In other words, appellee asserts that a motorcycle cannot be made crashworthy and the crashworthiness doctrine cannot logically, or in commonsense, be extended to motorcycle manufacturers. We reject that argument.
It is clear that the crashworthiness doctrine is simply an aspect of basic principles of negligence and we have no difficulty in finding that these principles extend to motorcycle manufacturers as well as to automobile manufacturers. It is just as foreseeable that a motorcycle will be involved in an accident as it is foreseeable that an automobile will be involved in an accident. Foreseeability is the conceptual cornerstone of the crashworthiness doctrine.
In Bolm v. Triumph Corporation, 33 N.Y.2d 151, 350 N.Y.S.2d 644, 305 N.E.2d 769 (N.Y. 1973), the Court of Appeals of New York applied the holding in Larsen to a case in which recovery was sought against the manufacturer of a motorcycle for an alleged defect in design which, though it played no part in causing the accident, aggravated or contributed to the plaintiff's injuries. The entire opinion in that case was devoted to the question whether the court should adopt the crashworthiness doctrine. There was no mention of the fact that the crashworthiness doctrine had previously been applied only in suits against automobile manufacturers. The court simply assumed without discussion that, for transportation purposes, a motorcycle is as much a motor vehicle as an automobile and the scope of reasonably foreseeable use is the same. We agree.
Appellee further argues that the crashworthiness doctrine applies only in the event of a "secondary collision," which appellee defines to mean contact between an occupant of a motor vehicle and a component of the vehicle. Appellee points out that Larsen, Evancho, and Bolm all involved secondary collisions; whereas, in this case, appellant's injuries were inflicted by forces or objects extraneous to the motorcycle.
There is nothing in the rationale of the cited cases, or in logic, which would justify such a restrictive interpretation. We agree with appellant that the same results would have been reached in those cases had the injuries been caused by contact with a substance unconnected with the vehicle in which the injured party was riding; for example, as appellant suggests, impact with another vehicle or with the pavement resulting from the swinging open of a defectively designed door.
We hold, therefore, that the crashworthiness doctrine applies to motorcycle manufacturers and applies in this case notwithstanding the absence of a "secondary collision."
*72 Having passed that hurdle, we address the question whether appellant's counts for breach of implied warranty and strict liability should stand. Arguing that they should not, appellee says that the crashworthiness doctrine allows recovery only on the ground of common law negligence and that the court in the Evancho case expressly foreclosed recovery on the theories of strict liability and implied warranty.
Appellant, on the other hand, argues that the court in Evancho did not address this question at all. We agree. In the first place, recovery in the Evancho case was sought only for negligence. In the second place, the doctrine of strict liability was not adopted by the Florida Supreme Court until six months after the decision in Evancho, when the court issued its opinion in West v. Caterpillar Tractor Company, Inc., 336 So.2d 80 (Fla. 1976).
In the West case, the court added the theory of strict liability to the traditional theories of negligence and breach of implied warranty as available vehicles for recovery in products liability cases. The theory of strict liability adopted by the court was the expression of liability contained in Section 402(a) of American Law Institute Restatement of Torts (2d), which states that liability may be imposed on a manufacturer who produces a product in a defective condition unreasonably dangerous to the user or consumer or to his property and physical harm is thereby caused to the ultimate user or consumer, or to his property.
The court identified the theory of strict liability with the theory of breach of implied warranty, pointing out that although these are two parallel but independent bodies of products liability law, the notion of "defective condition unreasonably dangerous to the user or consumer or to his property" is not different from the notion of "unmerchantability" as applied in warranty law. The court said that strict liability means negligence as a matter of law or negligence per se, the effect of which is to remove the burden from the user of proving specific acts of negligence. It pointed out that the adoption of the doctrine of strict liability in tort does not result in the demise of the contractual remedy based on implied warranty. If the user is injured by a defective product, but the circumstances do not create a contractual relationship with the manufacturer, then the vehicle for recovery could be in tort for negligence or on strict liability. If there is a contractual relationship with the manufacturer, the vehicle of implied warranty remains.
Thus it can be seen that a given set of facts can support alternative theories of recovery in a products liability case, in tort for negligence or strict liability, and in contract for breach of implied warranty. There is nothing in the conceptual foundation of the crashworthiness doctrine which prevents these theories of recovery from being as available in a crashworthiness case as in any other products liability case. On the contrary, intended use is a common element of these avenues of recovery, and the crashworthiness doctrine establishes as a matter of law that involvement in a collision is a foreseeable and, therefore, intended use of a motor vehicle. Badorek v. General Motors Corp:, 11 Cal. App.3d 902, 90 Cal. Rptr. 305 (1970); 24 Vand.L.Rev. 862 (1971).
We hold that the allegations of appellant's counts against appellee for negligence, breach of warranty, and strict liability are sufficient to state a cause of action on each of those theories of recovery. The negligence count alleges that appellee owed a duty of reasonable care to appellant because it was reasonably foreseeable to appellee that motorcycles manufactured and designed by it may be involved in accidents, and that this duty was breached by appellee's failure to equip the motorcycle upon which appellant was a passenger with a safety device to protect passengers' legs from injuries when involved in accidents. The breach of implied warranty count alleges the existence of an implied warranty by appellee that its motorcycles are reasonably fit for ordinary use as motorcycles upon which passengers can be transported with a reasonable degree of safety, and that a *73 breach of that warranty occurred when appellee failed to provide any safety device on its motorcycle to protect passengers' legs during collisions. The strict liability count alleges that when placed on the market by appellee, the motorcycle in question contained a defect that was unreasonably dangerous to passengers in that there was no safety device to provide any protection for passengers' legs in the event of a collision.
Whether a jury will agree with any of appellant's assertions of liability is another matter; but at the least, appellant is entitled to present to a jury the question whether appellee failed to use reasonable care, or breached its implied warranty of merchantability, or manufactured an unreasonably dangerous product.
Reversed with directions that appellant's counts against appellee be reinstated and for further proceedings consistent with this opinion.
Reversed.
HOBSON, A.C.J., and RYDER, J., concur.
NOTES
[1] See §§ 672.314-315, Fla. Stat. (1977).