Jaime CAMACHO and Kathleen Camacho, Plaintiffs-Appellants,

v.

HONDA MOTOR CO., LTD., a corporation; and American Honda Motor Co., Inc., a California corporation, Defendants-Appellees.

No. 82CA1322.

Colorado Court of Appeals, Div. II.

Jan. 24, 1985.

Rehearing Denied Feb. 21, 1985.

Certiorari Granted June 10, 1985.

Roger T. Castle, Denver, for plaintiffs-appellants.

Greengard & Senter, Richard D. Greengard, Peter T. Moore, Denver, for defendants-appellees.

SMITH, Judge.

In this products liability case, plaintiffs, Jaime and Kathleen Camacho, appeal from a summary judgment denying their strict liability, negligence, and breach of warranty claims against Honda Motor Co., Ltd., and American Honda Motor Co., Inc. (the defendants), as the manufacturers of a

1978 Honda Hawk motorcycle. Plaintiffs' claims against another defendant, Leland E. Wilkins, remain at issue. The judgment appealed from was certified as final by the trial court pursuant to C.R.C.P. 54(b). We affirm.

Mr. Camacho purchased the motorcycle in early 1978 from a local Honda dealer. Several months later, while driving the motorcycle through an intersection, he collided with an automobile driven by Wilkins and sustained serious injuries to both of his legs.

Thereafter, plaintiffs commenced the present action against Wilkins and the defendants to recover damages for personal injuries and loss of consortium. In their complaint, plaintiffs alleged that the motorcycle was defectively designed because it was not equipped with "crash bars" or other devices to protect the driver's legs in the event of a collision and that had such devices been installed on the motorcycle, the injuries sustained by Mr. Camacho would have been less severe. Plaintiffs further alleged that investigations and tests conducted by the defendants in 1969 established the feasibility of reducing the risk of harm to a motorcycle driver's legs in the event of a collision by installing crash bars or other leg protection devices. Plaintiffs also claimed that they were unaware of the feasibility of installing crash bars on motorcycles even though such devices had been installed on motorcycles as optional equipment by some manufacturers for several years prior to the date Mr. Camacho purchased the motorcycle manufactured by the defendants.

In granting summary judgment in favor of the defendants, the trial court concluded, as a matter of law, that the motorcycle was not defective and unreasonably dangerous simply because it was not equipped with crash bars. In so ruling, the court noted that the risk of harm or danger complained of was both "obvious and foreseeable by a person of ordinary perceptions and sensibilities," and that the defendants had no duty to install leg protection devices on the motorcycle or to warn plaintiffs of the obvious danger. We agree with the conclusions of the trial court.

■ Under the "second collision" or "crashworthiness" doctrine, liability may be imposed on a manufacturer for a design defect which contributes to the severity of injuries sustained in an accident, even though the accident itself was not causally related to the defect. *Roberts v. May*, 41 Colo.App. 82, 583 P.2d 305 (1978). The "second collision" doctrine has been applied to accidents involving motorcycles. *See Taylor v. American Honda Motor Co.*, 555 F.Supp. 59 (M.D.Fla.1983); *Stueve v. American Honda Motors Co.*, 457 F.Supp. 740 (D.Kan.1978); *Cota v. Harley Davidson*, 684 P.2d 888 (Ariz.App.1984); *Nicolodi v. Harley-Davidson Motors Co.*, 370 So.2d 68 (Fla.Dist.Ct.App.1979).

■ However, a manufacturer has no duty to produce the safest product possible, but rather has the duty to avoid placing on the market a product which, because of a defect, presents an unreasonable risk of harm to others. *See Roberts v. May, supra.*

■ Further, under Restatement (Second) of Torts § 402A, to warrant imposing strict liability on a manufacturer, it must be established that the product complained of was unreasonably dangerous *because of a defect. See Potthoff v. Alms*, 41 Colo. App. 51, 583 P.2d 309 (1978). Motorcycles are notorious for being dangerous precisely because they afford no protection to unenclosed riders in the event of a collision. However, the question here is not whether the motorcycle purchased by Mr. Camacho was dangerous but whether the absence of crash bars rendered the motorcycle defective and unreasonably dangerous because of the defect.

■ No all-inclusive definition of the term "defective condition unreasonably dangerous" has been formulated. *See Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973). However, in determining whether a product is unreasonably dangerous because of a defect, safety considera-

tions must be viewed in the context of consumer choice and the realities of the marketplace. *See Curtis v. General Motors Corp.*, 649 F.2d 808 (10th Cir.1981). A product is not necessarily in a "defective condition unreasonably dangerous" simply because it could feasibly have been made safer. A lightweight car, for example, is neither defective nor unreasonably dangerous merely because a heavier car might provide more protection in the event of a collision.

In light of these principles, we conclude that the absence of leg protection devices was not a defect that rendered the motorcycle unreasonably dangerous.

■■■ We are aware that whether a product is unreasonably dangerous because of a defect is generally a question for the jury or trier of fact to determine. *Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978). However, in the absence of any applicable governmental regulations or industry standards, a product is not unreasonably dangerous because of a defect if the extent of the danger would have been fully anticipated by or within the contemplation of "the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A, comment i; *cf. Curtis v. General Motors Corp., supra.*

In the present case, it was undisputed that at the time Mr. Camacho purchased the motorcycle, crash bars or other leg protection devices were not installed as standard equipment on motorcycles produced by any manufacturer. Nor were such devices required by any governmental regulations. Further, the absence of crash bars on the motorcycle purchased by Mr. Camacho was fully apparent, and the specific risk of harm complained of was a matter of common public knowledge.

■■ Given these circumstances, we do not believe that a jury could reasonably determine that the specific risk of harm complained of here would not have been fully anticipated by the ordinary consumer possessed with the ordinary knowledge common to the community. Consequently we conclude, as a matter of law, that the extent of the danger was within the contemplation of the ordinary consumer and that the motorcycle was not in a "defective condition unreasonably dangerous" merely because it was not equipped with crash bars or other leg protection devices. *Cf. Bookout v. Victor Comptometer Corp.*, 40 Colo.App. 417, 576 P.2d 197 (1978).

Plaintiffs contend that the definition of unreasonably dangerous set forth in Restatement (Second) of Torts § 402A, comment i, is not in accordance with Colorado case law, that the focus should be exclusively on the product itself without any reference to consumer expectations or knowledge, and that the "unreasonably dangerous" requirement should be eliminated as an element in a strict liability claim. We disagree.

■■ Colorado has consistently adhered to the requirement that, to impose strict liability on a manufacturer, it must be established that a product is defective and in addition that it is unreasonably dangerous because of the defect. *See, e.g., Potthoff v. Alms, supra.* Moreover, in *Union Supply Co. v. Pust, supra,* the supreme court expressly noted that:

"We are fully aware of the split in authority on the definition of strict liability. Section 402A requires a plaintiff to prove that a product is in a "defective condition unreasonably dangerous to the user or consumer." Several courts have eliminated the "unreasonably dangerous" portion of this definition because it introduces negligence language into a strict liability cause of action.... This deletion of "unreasonably dangerous" has been extended to design defect cases.... In Colorado, we have traditionally used the complete language from section 402A.... We find that the "unreasonably dangerous" portion of the definition serves the useful function of placing some limits on the liability of a manufacturer or seller."

Consistent with the holding in *Pust, supra,* we will not condone a rule that would imply the existence of a defect whenever it is established that a product could feasibly be made safer. Unfiltered cigarettes, for example, are not defective simply because filtered cigarettes might be less dangerous to the consumer. In our view, the "unreasonably dangerous" requirement serves the useful function of balancing safety considerations against a policy which favors product diversity and consumer choice. Automobiles, and numerous other types of products, vary considerably in their safety features and characteristics. However, the law does not require that manufacturers produce only the safest product feasible in order to avoid being exposed to liability. Rather it requires them to avoid placing on the market products that are rendered "unreasonably dangerous" because of a defect in design or manufacture.

The cases cited by plaintiffs do not support their contention. *Union Supply Co. v. Pust, supra,* involved an industrial accident in which the element of consumer choice was not present. Further, although the defect complained of may have been readily apparent, the extent of the danger might not have been fully anticipated by the ordinary user of the product. In *Roberts v. May, supra,* the specific risk of harm complained of was neither fully apparent nor within the contemplation of the ordinary consumer.

For the same reason, we reject plaintiffs' contention that the motorcycle was in a "defective condition unreasonably dangerous" because the defendants failed to warn the plaintiffs of the risk of harm of driving a motorcycle without crash bars or leg protection devices. Since the specific risk of harm complained of was fully apparent, widely known, and commonly recognized and would have been anticipated by the ordinary user or consumer, no warning was required. *See Bookout v. Victor Comptometer Corp., supra;* CJI–Civ.2d 14:20 (1980).

We also reject plaintiffs' contention that the motorcycle was defective because the defendants failed to advise them of the feasibility of reducing the risk of harm in the event of a collision by installing crash bars. We know of no authority imposing a duty on a manufacturer to advise a consumer of feasible alternatives that might render a product safer. Obviously, under certain circumstances, the existence of a feasible alternative is relevant to determining whether a product is defective. However, where, as here, the product is not unreasonably dangerous because of a defect, then strict liability may not be imposed on a manufacturer for failing to advise of some feasible alternative that might have rendered the product safer. *See Curtis v. General Motors Corp., supra.*

Plaintiffs further contend that the question of whether the defendants were negligent or breached an implied warranty in failing to offer crash bars or leg protection devices as optional equipment should have been submitted to the jury. We disagree.

In any products liability case, regardless of whether recovery is sought under a theory of strict liability, negligence, or breach of an implied warranty, in order to impose liability on the manufacturer of a product, the complaining party must establish that the product causing the injury or damage was unreasonably dangerous because of a defect. *See* W. Prosser, *Torts* § 103 (4th ed. 1971); R. Hursh & H. Bailey, *American Law of Products Liability 2d* § 1:7 (1974). However, we are aware of no authority which would impose a duty on manufacturers to offer all feasible safety devices as optional equipment, and we decline to adopt such a rule here.

The existence of a duty is a threshold question of law for the court, not a fact question for the jury. *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313 (Colo.1980); *Leppke v. Segura,* 632 P.2d 1057 (Colo.App.1981). Inasmuch as we have concluded that the trial court here was correct in finding that, as a matter of law, there was no such duty, we hold that

the entry of summary judgment in favor of defendants was proper.

Judgment affirmed.

PIERCE and BABCOCK, JJ., concur.