Jaime CAMACHO and Kathleen
Camacho, Petitioners,

v.

HONDA MOTOR CO., LTD., a corpora-
tion; and American Honda Motor Co.,
Inc., a California corporation, Respon-
dents.

No. 85SC112.

Supreme Court of Colorado,
En Banc.

July 13, 1987.

Rehearing Denied Sept. 8, 1987.

Roger T. Castle, P.C., Roger T. Castle, Denver, for petitioners.

Greengard & Senter, Richard D. Greengard, Holly E. Rebstock, Steven J. Dawes, Denver, for respondents.

Gerald P. McDermott, Waller, Mark & Allen, P.C., Denis H. Mark, Denver, for amicus curiae The Colorado Trial Lawyers Ass'n.

Holland & Hart, John C. Siegesmund, III, Denver, Skadden, Arps, Slate, Meagher & Flom, Malcolm E. Wheeler, Charlotte A. Lowell, Los Angeles, Cal., for amici curiae Product Liability Advisory Council, Inc. and Motor Vehicle Mfrs. Ass'n of the U.S., Inc.

KIRSHBAUM, Justice.

We granted certiorari to review the decision in *Camacho v. Honda Motor Co.*, 701 P.2d 628 (Colo.App.1985), in which the Court of Appeals affirmed a trial court order dismissing claims filed by the petitioners, Jaime Camacho and Kathleen Camacho (the Camachos), against the respondents, Honda Motor Co., Ltd. and American Honda Motor Co., Inc. (Honda).[1] The Court of Appeals held that the trial court properly granted a motion for summary judgment filed by Honda because the absence of leg protection devices could not as a matter of law render a motorcycle a defective and unreasonably dangerous product under the Restatement (Second) of Torts section 402A (1965). We reverse and remand with directions.

I

In March 1978, Jaime Camacho (Camacho) purchased a new 1978 Honda Hawk motorcycle, model CV400T2, from a Honda dealer.[2] In May 1978, while driving the motorcycle through an intersection, Camacho collided with an automobile and sustained serious leg injuries. Camacho and his wife filed an action against Honda seeking damages for personal injuries, property losses, loss of consortium and exemplary

---

1. The Colorado Trial Lawyers Association, the Product Liability Advisory Council, Inc. and the Motor Vehicle Manufacturers Association of the United States, Inc. were granted leave to file briefs and participate in oral argument before this court.

2. The motorcycle was manufactured by Honda Motor Co., Ltd. and distributed by American Honda Motor Co., Inc., a wholly owned subsidiary of Honda Motor Co., Ltd.

damages. The action was based on several theories, including strict liability.[3] The Camachos alleged that the motorcycle was a defectively designed, unreasonably dangerous product under the Restatement (Second) of Torts section 402A because it was not equipped with "crash bars"—tubular steel bars attached to the motorcycle frame to protect the rider's legs in the event of a collision. They asserted that if such crash bars had been installed on the motorcycle, Camacho's leg injuries would have been mitigated.

Two mechanical engineers employed by the Camachos testified in depositions that, in light of their extensive research work on motorcycle crash bars, including testing conducted for the United States Department of Transportation, the state of the art in mechanical engineering and motorcycle design was such that effective injury-reducing, leg protection devices were feasible in March 1978 and that several manufacturers other than Honda had made such devices available as optional equipment;[4] that, although room for further improvement of crash bars existed in March 1978, crash bars then available from manufacturers other than Honda provided some protection in low-speed collisions and, in particular, would have reduced or completely avoided the serious leg injuries suffered by Camacho; and that Honda itself had conducted some of the seminal research on crash bars in 1969, as the result of which Honda's engineers had concluded that injury-reducing crash bars could be manufactured by strengthening the steel bars which had been tested and providing strong bolts to attach the bars to the motorcycle frame.

Honda moved for summary judgment, arguing that as a matter of law a motorcycle lacking crash bars cannot be deemed unreasonably dangerous. The trial court granted the motion, concluding that (1) because the danger of leg injury was obvious and foreseeable, Honda had no duty to totally alter the nature of its product by installing crash bars; and (2) Honda had no duty under the crashworthiness doctrine to add a safety feature to its product to reduce the severity of injuries resulting from accidents.

In agreeing with the trial court's conclusions, the Court of Appeals held that the determination of whether a product is unreasonably dangerous because of a design defect is to be made on the basis of whether the extent of the danger "would have been fully anticipated by or within the contemplation of" the ordinary user or consumer. *Camacho v. Honda Motor Co.*, 701 P.2d 628, 631 (Colo.App.1985). Because the criteria applied by the trial court and the Court of Appeals are inconsistent with our decisions in *Ortho Pharmaceutical Corp. v. Heath*, 722 P.2d 410 (Colo.1986), and *Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978), we reverse and remand for further proceedings.

## II

In *Roberts v. May*, 41 Colo.App. 82, 583 P.2d 305 (1978), the Court of Appeals recognized the applicability of the "crashworthiness" doctrine in Colorado. Under this doctrine, a motor vehicle manufacturer

---

**3.** The Camachos alternatively relied upon theories of negligence and implied warranty of merchantability. Because the only issue raised in the petition for certiorari concerns the appropriate test for strict liability under the Restatement (Second) of Torts § 402A, we do not address the negligence and implied warranty of merchantability issues. The Camachos also sought recovery from a third party, the driver of the automobile involved in the collision, based on a negligence theory. The order of summary judgment did not dispose of that claim, and we do not here address it.

**4.** Some of these devices were denominated "engine protectors" or "engine guards," but, according to testimony of the Camachos' expert witnesses, would also mitigate leg injuries.

Although it is undisputed that in March 1978 Honda did not offer leg protection devices as original equipment, standard or optional, on any of its motorcycles sold in the United States, Honda did offer "bumpers" as optional equipment on motorcycles sold to police agencies in Japan. The record indicates that the "bumpers," consisting of tubular steel pipe attached to the frame of the motorcycle, were made available at the request of police officials, but the exact reasons for the request are not disclosed by the record.

may be liable in negligence or strict liability for injuries sustained in a motor vehicle accident where a manufacturing or design defect, though not the cause of the accident, caused or enhanced the injuries. *See generally* 2 L. Frumer & M. Friedman, *Products Liability* § 3.03[4][f][v] (1987). The doctrine was first recognized in the landmark case of *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968), in which the court noted that a manufacturer's duty encompassed designing and building a product reasonably fit and safe for its intended use, that automobiles are intended for use on the roadways and that injury-producing collisions are a frequent, foreseeable and statistically expectable result of such normal use. Incumbent upon the automobile manufacturer was a duty of reasonable care in the design and manufacture of its product, including a duty to use reasonable care to minimize the injurious effects of a foreseeable collision by employing commonsense safety features. *Larsen v. General Motors Corp.*, 391 F.2d 495, 501–02. The crashworthiness doctrine has been adopted by the vast majority of courts in other jurisdictions which have considered the issue. *E.g., Hermann v. General Motors Corp.*, 720 F.2d 414 (5th Cir.1983); *Sours v. General Motors Corp.*, 717 F.2d 1511 (6th Cir.1983); *Horn v. General Motors Corp.*, 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976); *Ford Motor Co. v. Evancho*, 327 So.2d 201 (Fla.1976); *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1978); *Smith v. Ariens Co.*, 375 Mass. 620, 377 N.E.2d 954 (1978); *Hancock v. Paccar, Inc.*, 204 Neb. 468, 283 N.W.2d 25 (1979); *McMullen v. Volkswagen of America*, 274 Or. 83, 545 P.2d 117 (1976); *see generally* 1 R. Goodman, *Automobile Design Liability* § 1:4 (2d ed. 1983) (noting the nearly universal acceptance of the crashworthiness doctrine). We agree with the reasoning of those decisions, as did the Court of Appeals in its consideration of this case, and adopt the crashworthiness doctrine for this jurisdiction.

The crashworthiness doctrine has been applied to accidents involving motorcycles. *E.g., Taylor v. American Honda*

*Motor Co.*, 555 F.Supp. 59 (M.D.Fla.1983) (lack of leg protection devices); *Stueve v. American Honda Motor Co.*, 457 F.Supp. 740 (D.Kan.1978) (inability of gas tank to withstand collision); *Cota v. Harley Davidson, a Div. of AMF, Inc.*, 141 Ariz. 7, 684 P.2d 888 (Ariz.App.1984) (inability of gas tank to withstand collision); *Nicolodi v. Harley-Davidson Motor Co.*, 370 So.2d 68 (Fla. Dist.Ct.App.1979) (lack of leg protection devices); *O'Donnell v. City of Casper*, 696 P.2d 1278 (Wyo.1985) (inability of gas tank to withstand collision). Honda argues, however, that motorcycles are inherently dangerous motor vehicles that cannot be made perfectly crashworthy and, therefore, that motorcycle manufacturers should be free of liability for injuries not actually caused by a defect in the design or manufacture of the motorcycle. We find no principled basis to conclude that liability for failure to provide reasonable, cost-acceptable safety features to reduce the severity of injuries suffered in inevitable accidents should be imposed upon automobile manufacturers but not upon motorcycle manufacturers. The use of motorcycles for transportation over roadways is just as foreseeable as the use of automobiles for such purpose. The crashworthiness doctrine does not require a manufacturer to provide absolute safety, but merely to provide some measure of reasonable, cost-effective safety in the foreseeable use of the product. *E.g., Larsen v. General Motors Corp.*, 391 F.2d 495, 501–02; *Nicolodi v. Harley-Davidson Motor Co.*, 370 So.2d 68, 70–71; *see generally* 1 R. Goodman, *Automobile Design Liability* § 1:4 (2d ed. 1983). Honda acknowledges that motorcycle accidents are just as foreseeable as automobile accidents and that motorcycle riders face a much greater risk of injury in the event of an accident than do occupants of automobiles. In view of the important goal of encouraging maximum development of reasonable, cost-efficient safety features in the manufacture of all products, the argument that motorcycle manufacturers should be exempt from liability under the crashworthiness doctrine because serious injury to users of that prod-

uct is foreseeable must be rejected. *Cota v. Harley Davidson, a Div. of AMF, Inc.,* 684 P.2d 888, 894; *Nicolodi v. Harley-Davidson Motor Co.,* 370 So.2d 68, 70–71.[5]

## III

In determining the extent of liability of a product manufacturer for a defective product, this court has adopted the doctrine of strict products liability as set forth in the Restatement (Second) of Torts section 402A (1965). *Smith v. Home Light & Power Co.,* 734 P.2d 1051 (Colo.1987); *Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579 (Colo. 1984); *Anderson v. Heron Eng'g Co.,* 198 Colo. 391, 604 P.2d 674 (1979); *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975). Section 402A provides:

### Special Liability of Seller of Product for Physical Harm to User or Consumer

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Honda asserts that as a matter of law a motorcycle designed without leg protection devices cannot be deemed "in a defective condition unreasonably dangerous to the user" because the risk of motorcycle accidents is foreseeable to every ordinary consumer and because it is obvious that motorcycles do not generally offer leg protection devices as a standard item. In support of this argument Honda relies on comment i to section 402A, which states in pertinent part:

i. **Unreasonably dangerous.** The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer.

. . . .

The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

The trial court and the Court of Appeals in essence applied this consumer contemplation test in dismissing the Camachos' claims.

In *Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972), the California Supreme Court declined to require an injured person to establish that a product is unreasonably dangerous as a requisite to recovery for injuries in a strict liability design defect context. In *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978), this court rejected the *Cronin* rationale, recognizing that requiring a party who seeks recovery on the basis of an alleged defec-

---

**5.** Under comment k of § 402A, an unavoidably unsafe product cannot be deemed unreasonably dangerous. However, for the rule precluding liability for unavoidably unsafe products to apply to a given product, the product's utility must greatly outweigh the risk created by its use, the risk must be a known one, the product's benefit must not be achievable in another manner and the risk must be unavoidable under the state of knowledge existing at the time of manufacture. *Belle Bonfils Memorial Blood Bank v. Hansen,* 665 P.2d 118 (Colo.1983). The exception to lia-

bility provided by comment k was intended to apply to drugs and medical products, as indicated by the illustrations accompanying comment k. *Id.; Toner v. Lederle Laboratories, A Div. of Am. Cyanamid Co.,* 112 Idaho 328, 732 P.2d 297 (1987); Robb, *A Practical Approach to Use of the State of the Art Evidence in Strict Products Liability Cases,* 77 Nw.U.L.Rev. 1, 16 (1982). Honda concedes that its Honda Hawk motorcycle is not an unavoidably unsafe product.

tive product to establish that the product is unreasonably dangerous appropriately places reasonable limits on the potential liability of manufacturers. However, we also held in *Pust* that the fact that the dangers of a product are open and obvious does not constitute a defense to a claim alleging that the product is unreasonably dangerous. We noted that adoption of such a principle would unfairly elevate the assumption of risk defense to a question of law.[6] The obvious and foreseeable consumer contemplation test employed by the trial court and approved by the Court of Appeals is substantially similar to the open and obvious standard specifically rejected in *Pust*. It is not the appropriate standard in Colorado for measuring whether a particular product is in a defective condition unreasonably dangerous to the consumer or user.

■ A consumer is justified in expecting that a product placed in the stream of commerce is reasonably safe for its intended use, and when a product is not reasonably safe a products liability action may be maintained. *See Bradford v. Bendix-Westinghouse Automotive Air Brake Co.*, 33 Colo.App. 99, 517 P.2d 406 (1973); *accord, e.g., Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976); *Putensen v. Clay Adams, Inc.*, 12 Cal.App.3d 1062, 91 Cal. Rptr. 319 (1970); *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 326 N.W.2d 372

(1982); *Nesselrode v. Executive Beechcraft, Inc.*, 707 S.W.2d 371 (Mo.1986); *O'Brien v. Muskin Corp.*, 94 N.J. 169, 463 A.2d 298 (1983); *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983); *Phillips v. Kimwood Mach. Co.*, 269 Or. 485, 525 P.2d 1033 (1974); *Azzarello v. Black Bros. Co.*, 480 Pa. 547, 391 A.2d 1020 (1978); *Galvan v. Prosser Packers, Inc.*, 83 Wash.2d 690, 521 P.2d 929 (1974); *see also* W. Prosser *The Law of Torts* § 96 at 641, 644–45 (4th ed. 1971) (Dean Prosser, Reporter for Restatement (Second) of Torts § 402A, noting that the basis of strict liability for design defects is that reasonable care must be used to design a product that is reasonably safe for its intended or foreseeable uses). Of course, whether a given product is reasonably safe and, therefore, not unreasonably dangerous, necessarily depends upon many circumstances. Any test, therefore, to determine whether a particular product is or is not actionable must consider several factors. While reference to "reasonable" or "unreasonable" standards introduces certain negligence concepts into an area designed to be free from those concepts, *e.g., Barker v. Lull Eng'g Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978); *Turner v. General Motors Corp.*, 584 S.W.2d 844 (Tex.1979); *see generally* J. Beasley, *Products Liability and the Unreasonably Dangerous Requirement* 21–

---

6. Where the obviousness of the danger inherent in the ordinary use of a product is not dispositive of whether the product is unreasonably dangerous, the plaintiff's appreciation of the danger may nonetheless rise to the level of assumption of the risk. Assumption of the risk is an affirmative defense to strict liability, requiring a showing of more than ordinary contributory negligence in that the plaintiff must have voluntarily and unreasonably proceeded to encounter a known danger the specific hazards of which the plaintiff had actual subjective knowledge. *Jackson v. Harsco Corp.*, 673 P.2d 363 (Colo.1983); *Anderson v. Heron Eng'g Co.*, 198 Colo. 391, 604 P.2d 674 (1979); *Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978); *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983 (1975); Restatement (Second) of Torts section 402A comment n (1965). The question of whether a plaintiff had actual knowledge of the specific hazards comprising the danger is ordinarily a fact question which should be left for the jury and not precluded by the conclu-

sion that the danger should have been obvious. *See, e.g., Anderson v. Heron Eng'g Co.*, 198 Colo. 391, 604 P.2d 674; *see also Curtis v. General Motors Corp.*, 649 F.2d 808 (10th Cir.1981) (purchaser of automobile with fiberglass roof made a conscious choice to forego purchase of other automobile available with steel roof, the latter of which would have provided greater safety); *Cota v. Harley Davidson, a Div. of AMF, Inc.*, 684 P.2d 888 (plaintiff did not assume the risk, where he was aware of general propensity for injury in motorcycle accident, but was not aware of specific risk that motorcycle gas tank might rupture in low-speed accidents); *Hunt v. Harley-Davidson Motor Co.*, 147 Ga.App. 44, 248 S.E.2d 15 (1978) (plaintiff assumed the risk where he had extensive experience riding motorcycles, both with and without crash bars, was aware of the purpose and utility of crash bars, inquired of their availability at the time of purchase, but failed to place a formal request for their installation at a subsequent date).

35, 72–94 (1981); Birnbaum, *Unmasking the Test for Design Defect: From Negligence [to Warranty] to Strict Liability to Negligence,* 33 Vand.L.Rev. 593 (1980), that difficulty is much less troublesome than are the problems inherent in attempting to avoid dealing with the competing interests always involved in allocating the risk of loss in products liability actions, *see generally* W.P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 99 (5th ed. 1984); Wade, *On Product "Design Defects" and Their Actionability,* 33 Vand.L.Rev. 551, 570–71 (1980). In this regard, comment c to section 402A contains the following pertinent observations:

> c. On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

■ These considerations strongly suggest that the consumer contemplation concept embodied in comment i, while illustrative of a particular problem, does not provide a satisfactory test for determining whether particular products are in a defective condition unreasonably dangerous to the user or consumer. In the final analysis, the principle of products liability con-

templated by section 402A is premised upon the concept of enterprise liability for casting defective products into the stream of commerce. *Jackson v. Harsco Corp.,* 673 P.2d 363 (Colo.1983). The primary focus must remain upon the nature of the product under all relevant circumstances rather than upon the conduct of either the consumer or the manufacturer. *Smith v. Home Light & Power Co.,* 734 P.2d 1051; *Jackson v. Harsco Corp.,* 673 P.2d 363; *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.,* 33 Colo.App. 99, 517 P.2d 406; Wade, *On Product "Design Defects" and Their Actionability,* 33 Vand.L. Rev. 551 (1980). Total reliance upon the hypothetical ordinary consumer's contemplation of an obvious danger diverts the appropriate focus and may thereby result in a finding that a product is not defective even though the product may easily have been designed to be much safer at little added expense and no impairment of utility.[7] W.P. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on The Law of Torts* § 99 at 66 (5th ed. 1984). Uncritical rejection of design defect claims in all cases wherein the danger may be open and obvious thus contravenes sound public policy by encouraging design strategies which perpetuate the manufacture of dangerous products. *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276; *accord, e.g., McGowne v. Challenge-Cook Bros., Inc.,* 672 F.2d 652 (8th Cir.1982) (applying Missouri Law); *Davis v. Fox River Tractor Co.,* 518 F.2d 481 (10th Cir.1975) (applying Oklahoma law); *Beloit Corp. v. Harrell,* 339 So.2d 992 (Ala.1976); *Byrns v. Riddell, Inc.,* 113 Ariz. 264, 550 P.2d 1065 (1976); *Auburn Mach. Works Co. v. Jones,* 366 So.2d 1167 (Fla.1979); *Siruta v. Hesston Corp.,* 232 Kan. 654, 659 P.2d 799 (1983); *Holm v. Sponco Mfg., Inc.,* 324 N.W.2d 207 (Minn.1982).

In *Ortho Pharmaceutical Corp. v. Heath,* 722 P.2d 410 (Colo.1986), we recently recognized that exclusive reliance upon con-

---

**7.** Similarly, in accordance with one of the underlying goals of strict liability of easing the burden of proof for a plaintiff injured by a defective product, the plaintiff is relieved of the requirement of proving the manufacturer's negligence. *See generally* Keeton, *Product Liability and the Meaning of Defect,* 5 St. Mary's L.J. 30, 34–35 (1973).

sumer expectations is a particularly inappropriate means of determining whether a product is unreasonably dangerous under section 402A where both the unreasonableness of the danger in the design defect and the efficacy of alternative designs in achieving a reasonable degree of safety must be defined primarily by technical, scientific information.[8] Moreover, manufacturers of such complex products as motor vehicles invariably have greater access than do ordinary consumers to the information necessary to reach informed decisions concerning the efficacy of potential safety measures. Harris, *Enhanced Injury Theory: An Analytical Framework*, 62 N.C.L.Rev. 643, 675 (1984). The principles that have evolved in the law of products liability have in part been developed to encourage manufacturers to use information gleaned from testing, inspection and data analysis to help avoid the "massive problem of product accidents." *Palmer v. A.H. Robins Co, Inc.*, 684 P.2d 187 (Colo.1984) (quoting Owen, *Punitive Damages in Products Liability Litigation*, 74 Mich.L.Rev. 1257, 1258 (1976)).

■■ A product may be unreasonably dangerous due to a manufacturing defect, a design defect or a failure to warn. *See generally* Walkowiak, *Reconsidering Plaintiff's Fault in Product Liability Litigation: The Proposed Conscious Design Choice Exception*, 33 Vand.L.Rev. 651, 654–56 (1980). The question in manufacturing defect cases is whether the product as produced conformed with the manufacturer's specifications. *Id.* Resolution of whether a particular product is unreasonably dangerous is more difficult in design defect or failure to warn cases, where the product has been manufactured exactly as intended. In *Ortho* we noted that the following factors are of value in balancing the attendant risks and benefits of a product to determine whether a product design is unreasonably dangerous:

(1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.

(2) The safety aspects of the product—the likelihood that it will cause injury and the probable seriousness of the injury.

(3) The availability of a substitute product which would meet the same need and not be as unsafe.

(4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

(5) The user's ability to avoid danger by the exercise of care in the use of the product.

(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

(7) The feasibility, on the part of the manufacturer, of spreading the loss by

**8.** Honda asserts that the application of the consumer expectation test is particularly appropriate in the context of motorcycle design defect claims because the motorcycle purchaser who is injured in an accident has bargained for the condition about which he complains and because the element of conscious consumer choice is invariably present in contradistinction to those claims involving accidents occurring in the workplace. We cannot agree that the purchaser of a motorcycle bargains for the risk of serious leg injury; rather, the purchaser bargains for a motorized vehicle the purpose of which is to provide an economical, open-air, maneuverable form of transportation on the roadways. *Cf.* Wade, *On the Nature of Strict Liability for Products*, 44 Miss.L.J. 825, 839–40 (1973) (noting that a plaintiff who has cut his finger on a sharp knife should not be able to maintain a cause of action against the manufac-turer of the knife on the theory that the knife was unsafe because it was sharp, because the very purpose of a knife is to cut); Page, *Generic Product Risks: The Case Against Comment k and For Strict Tort Liability*, 58 N.Y.U.L.Rev. 853, 857 (1983) (noting that the capacity of a knife to cut is essential to its intended use, whereas the capacity of a particular drug to cause cancer is not essential to the effectiveness of the drug). We also note that Honda's assertion that motorcycle design defect claims cannot involve accidents occurring in the workplace is contrary to common experience. *See, e.g., Dawson v. Harley-Davidson Motor Co.,* No. 601–686 (Milwaukee, Wis. County Cir.Ct. June 8, 1984) (where ineffective crash bars provided on 1978 Harley-Davidson motorcycle, police officer awarded recovery for leg injuries incurred in motorcycle accident which occurred while officer on duty).

setting the price of the product or carrying liability insurance.

*Ortho Pharmaceutical Corp. v. Heath,* 722 P.2d 410, 414 (relying on Wade, *On the Nature of Strict Tort Liability for Products,* 44 Miss.L.J. 825, 837–38 (1973)). The factors enumerated in *Ortho* are applicable to the determination of what constitutes a product that is in a defective unreasonably dangerous condition. By examining and weighing the various interests represented by these factors, a trial court is much more likely to be fair to the interests of both manufacturers and consumers in determining the status of particular products.

The question of the status of the motorcycle purchased by Camacho involves in part the interpretation of mechanical engineering data derived from research and testing—interpretation which necessarily includes the application of scientific and technical principles. In addition, the question posed under the crashworthiness doctrine is not whether the vehicle was obviously unsafe but rather whether the degree of inherent dangerousness could or should have been significantly reduced. The record contains some evidence to support the conclusion that Honda could have provided crash bars at an acceptable cost without impairing the motorcycle's utility or substantially altering its nature and Honda's failure to do so rendered the vehicle unreasonably dangerous under the applicable danger-utility test. It is far from certain, however, that the ultimate answer to this question can be determined on the basis of the limited facts thus far presented to the trial court.

## IV

Camacho also asserts that the failure to provide adequate warnings rendered the Honda Hawk motorcycle in a defective condition unreasonably dangerous. A manufacturer may be strictly liable to the user of a product when failure to provide adequate warnings renders the product defective and unreasonably dangerous. *Palmer v. A.H. Robins Co, Inc.,* 684 P.2d 187 (Colo.1984); *Anderson v. Heron Eng'g Co.,* 198 Colo. 391, 604 P.2d 674 (1979). The purpose of a warning is to ensure that an otherwise dangerous product is used in a reasonably safe manner. *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978); *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975); *Bailey v. Montgomery Ward & Co.,* 690 P.2d 1280 (Colo.App.1984); Restatement (Second) of Torts section 402A comment j (1965). Presuming, without deciding, that the Honda motorcycle was unreasonably dangerous or was rendered unreasonably dangerous by a failure to warn, it is unclear on precisely what basis Camacho asserts that a warning would have rendered the product reasonably safe.[9] Arguably, a warning that injury-reducing crash bars were available as optional equipment or as add-on equipment would render an otherwise unreasonably dangerous motorcycle reasonably safe. *See, e.g., Wagner v. International Harvester Co.,* 611 F.2d 224, 231 (8th Cir.1979) (where motor vehicle could not be used as intended without a known risk of accidents involving rollovers, manufacturer's duty to supply safe product would have been fulfilled if rollover protection offered as option); *cf. Height v. Kawasaki Heavy Indus., Ltd.,* 190 N.J.Super. 7, 461 A.2d 757 (where motorcycle rider burned by gasoline sprayed from relief valve following collision, refusal to instruct on failure to warn proper in absence of proof that warning would have made fuel system safer or that plaintiff could have done anything to prevent his burns other than avoid collision), *cert. denied,* 94 N.J. 615, 468 A.2d 244 (1983). We conclude that the efficacy of providing a warning is an appropriate issue for further inquiry by the trial court on remand.

## V

Under C.R.C.P. 56(c), summary judgment is proper only when there is no

---

9. Honda argues that it had no duty to warn where the danger was open and obvious. As this court has previously ruled, a duty to warn may exist where the danger is patent if such warning might reduce the risk of harm attendant upon use of the product. *See Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978).

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *E.g., Continental Airlines, Inc. v. Keenan,* 731 P.2d 708 (Colo. 1987); *Huydts v. Dixon,* 199 Colo. 260, 606 P.2d 1303 (1980). The moving party has the burden of establishing the nonexistence of a genuine issue of material fact. *Urban v. Beloit Corp.,* 711 P.2d 685 (Colo.1985); *Ginter v. Palmer & Co.,* 196 Colo. 203, 585 P.2d 583 (1978).

The Camachos proffered evidence that the Honda Hawk motorcycle could have been equipped with crash bars which would mitigate injuries in low-speed, angled-impact collisions such as the one in which Camacho was involved. The Camachos' expert witnesses' interpretation of research and testing data indicated that the maneuverability of the motorcycle could be retained by making the crash bars no wider than the handlebars, that the stability of the motorcycle could be retained by mounting the crash bars relatively close to the center of gravity and that the addition of crash bars would not impair the utility of the motorcycle as a fuel efficient, open-air vehicle nor impair the safety of the motorcycle in accidents which varied in kind from the accident involving Camacho. These conclusions are all strenuously disputed by Honda. However, precisely because the factual conclusions reached by expert witnesses are in dispute, summary judgment as to whether the design strategies of Honda were reasonable is improper.[10] *Roberts v. May,* 41 Colo.App. 82, 583 P.2d 305 (1978).

The judgment is reversed, and the case is remanded to the Court of Appeals with directions to remand the case to the trial court for further proceedings consistent with the views expressed in this opinion.

**10.** The elements of a strict liability cause of action for manufacturing design defects are that the product is in a defective condition unreasonably dangerous to the user or consumer, that the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold, that the seller is engaged in the business of selling such products, that the design defect is the cause of the plaintiff's injury and that the plaintiff sustained damages as a result of the design defect. *Belle*

VOLLACK, J., dissents.

ERICKSON and ROVIRA, JJ., join in the dissent.

VOLLACK, Justice, dissenting:

Because I believe that the court of appeals correctly affirmed the trial court's order, I respectfully dissent.

The issue before the court is what test should apply in determining whether a product has a design defect causing it to be in a defective condition that is unreasonably dangerous. After arriving at the appropriate test, we must decide whether the court of appeals correctly affirmed the trial court's summary judgment order. The underlying factual issue is whether a manufacturer's failure to equip a motorcycle with crash bars or other leg protection devices is a design defect that renders the motorcycle in a defective condition unreasonably dangerous.

### I.

Although some jurisdictions have deleted the "unreasonably dangerous" language, Colorado has expressly retained it. *Union Supply Co. v. Pust,* 196 Colo. 162, 171 n. 5, 583 P.2d 276, 282 n. 5 (1978); *Pothoff v. Alms,* 41 Colo.App. 51, 53, 583 P.2d 309, 311 (1978). A plaintiff must prove "that a product was both 'defective' and 'unreasonably dangerous' in order to sustain a cause of action in strict liability under section 402A." *Kysor Indus. Corp. v. Frazier,* 642 P.2d 908, 911 (Colo.1982).

### II.

We have not before decided what test should apply in determining whether a product is "unreasonably dangerous" in a design defect case. I believe the appropri-

*Bonfils Memorial Blood Bank v. Hansen,* 665 P.2d 118 (Colo.1983); *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978). Here, the summary judgment ruling dealt only with the narrow issue of whether, as a matter of law, a motorcycle without leg protection devices cannot be deemed unreasonably dangerous. To obtain a verdict in his favor, a plaintiff must, of course, ultimately prove all of the elements of a strict liability cause of action.

ate test is defined in *Restatement (Second) of Torts* § 402A comment i (1965). Comment i states: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics" [hereinafter the consumer contemplation test].

Some jurisdictions have adopted this test; others have adopted it in part or rejected it. *See Nichols v. Union Underwear Co.,* 602 S.W.2d 429 (Ky.1980) ("Some seventeen jurisdictions adhere to this rule, eighteen have repudiated it, and sixteen, including Kentucky, have not addressed the issue." *Id.* at 432).

Some states using this test are the following:

Illinois applies a "consumer expectation" test whereby a defective condition of a product will be considered "unreasonably dangerous" when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

*Riordan v. International Armament Corp.,* 132 Ill.App.3d 642, 650, 87 Ill.Dec. 765, 770, 477 N.E.2d 1293, 1298 (1985); *Barnes v. Vega Indus., Inc.,* 234 Kan. 1012, 676 P.2d 761 (1984) (trial court did not err in giving jury instruction defining unreasonably dangerous in accord with the comment i consumer expectation test); *Willamette Essential Oils v. Herrold & Jensen,* 68 Or.App. 401, 683 P.2d 1374 (1984) (discussing Oregon's Uniform Jury Instruction, which states: " 'A product may be shown to be defective by proof of one (or more) of the following: ... 1. A defect in manufacture; 2. A defective design; 3. Failure to perform safely under circumstances in which, from common knowledge, the average user reasonably could have expected the product to perform safely.' " *Id.* 683 P.2d at 1377); *Seattle-First Nat'l Bank v. Tabert,* 86 Wash.2d 145, 154, 542 P.2d 774, 779 (1975) (defective product not reasonably safe in products liability "means that it must be unsafe to an extent beyond that which would be reasonably contemplated by the ordinary consumer.").

Other jurisdictions have adopted a variation of the consumer expectation test. *Dart v. Wiebe Mfg., Inc.,* 147 Ariz. 242, 709 P.2d 876 (1985) (where consumer expectation test is sufficient to resolve a case, that test is to be used; where that test "fails to provide a complete answer," application of risk/benefit factors is appropriate. 147 Ariz. at 245–46, 709 P.2d at 879–80); *Nichols v. Union Underwear Co.,* 602 S.W.2d 429 (Ky.1980) (consumer expectation or knowledge is just one factor to be considered by a jury in determining whether a product is unreasonably dangerous. *Id.* at 433); *Knitz v. Minster Machine Co.,* 69 Ohio St.2d 460, 432 N.E.2d 814 (1982) (product is of defective design "if (1) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if the benefits of the challenged design do not outweigh the risk inherent in such design." *Id.* at 466, 432 N.E.2d at 818).

Other states have rejected the consumer expectation test. *Prentis v. Yale Mfg. Co.,* 421 Mich. 670, 365 N.W.2d 176 (1984) ("[W]e adopt, forthrightly, a pure negligence, risk-utility test in products liability actions against manufacturers of products, where liability is predicated upon defective design." *Id.* at 691, 365 N.W.2d at 186); *Turner v. General Motors Corp.,* 584 S.W.2d 844 (Tex.1979) (risk-utility test will be applied "when the considerations of utility and risk are present in the state of the evidence." *Id.* at 851).

### III.

The Colorado Court of Appeals has held that in a strict liability case the focus is "on the product itself and the consumer's expectations with regard to that product." *Bradford v. Bendix-Westinghouse Automotive Air Brake Co.,* 33 Colo.App. 99, 110, 517 P.2d 406, 413 (1974). In a products liability action against a brake pedal manufacturer, the court applied the language of section 402A comment i: "[A] product is 'unreasonably dangerous' if it is

dangerous 'to an extent beyond that which would be contemplated by the ordinary consumer who purchases it....'" *Id.*

In *Curtis v. General Motors Corp.,* the Tenth Circuit Court of Appeals applied Colorado law in a case involving an automobile manufacturer's alleged failure to provide adequate roll-over protection. 649 F.2d 808 (10th Cir.1981). The Tenth Circuit held that when a strict liability claim is predicated on a manufacturer's failure to install an added safety device, "liability will not attach simply because a feasible alternative would have rendered the product safer." 649 F.2d at 811, applied in *Davis v. Caterpillar Tractor Co.,* 719 P.2d 324, 327 (Colo. App.1985).

The cases discussed demonstrate that states have taken a variety of approaches to resolve this question. Because of the nature of the product here, I believe the appropriate test is the consumer contemplation or consumer expectation test. The facts presented in this case differ from cases which involve the defective condition of products such as automobile brakes, prescription drugs, and gas tanks. With those types of products, the ordinary consumer is not capable of assessing the danger of the product. On the other hand, an ordinary consumer is necessarily aware that motorcycles can be dangerous. The plaintiff had the choice to purchase other motorcycles by other manufacturers which carried additional safety features, and instead elected to purchase this particular motorcycle and ride it without leg protection devices. The conclusion follows that the trial court's ruling and the court of appeals' decision were correct.

## IV.

I believe the majority errs in applying the "crashworthiness" or "second collision" test to these facts. The "crashworthiness" test goes to injuries "usually caused by the so-called 'second collision' of the passenger with the interior part of the automobile, [which] are foreseeable." *Larsen v. General Motors Corp.,* 391 F.2d 495 (8th Cir. 1968), *quoted in Roberts v. May,* 41 Colo. App. 82, 85, 583 P.2d 305, 308 (1978). This case does not involve additional or enhanced injuries suffered by the plaintiff's impact or "second collision" with the motorcycle itself.

I also believe the majority incorrectly relies on *Ortho Pharmaceutical Corp. v. Heath,* 722 P.2d 410 (Colo.1986). I believe the risk-benefit test cited by the majority and applied in *Ortho* is an appropriate test for products such as drugs, because their danger "is defined primarily by technical, scientific information," and because some drugs are unavoidably unsafe in some respect. *Id.* at 414. A consumer of drugs cannot realistically be expected to foresee dangers in prescribed drugs which even scientists find to be complex and unpredictable. On the other hand, the purchaser of a motorcycle knows that the purchase and use of "an economical, open-air, maneuverable form of transportation," maj. op. at 1247, n. 8, presents the risk of accidents and resulting injuries due to the open-air nature of the motorcycle.

Because I believe that the correct test under facts such as these is the consumer-contemplation test, I would affirm the court of appeals' decision. Accordingly, I respectfully dissent.

I am authorized to state that Justice ERICKSON and Justice ROVIRA join in this dissent.