**Larry WHITE and Beverly White, Plaintiffs–Appellants,**

**and**

**State Compensation Insurance Authority, Plaintiff–Intervenor–Appellant,**

**v.**

**CATERPILLAR, INC., a Delaware corporation; Paccar, Inc., a Delaware corporation; Paccar Leasing Corporation, a Delaware corporation; Lease Midwest, Inc., a Missouri corporation; Colorado Kenworth, Inc., a Colorado corporation, Defendants–Appellees.**

**No. 91CA1696.**

Colorado Court of Appeals, Div. III.

July 15, 1993.

As Modified on Denial of Rehearing Sept. 2, 1993.

Certiorari Denied Feb. 7, 1994.

James L. Gilbert & Associates, P.C., James L. Gilbert, Stuart A. Ollanik, Arvada, for plaintiffs-appellants.

Fowler, Schimberg & Cowman, P.C., Jeffrey J. Cowman, Denver, for plaintiff-intervenor-appellant.

Holland & Hart, Harry L. Hobson, Christopher H. Toll, Denver, for defendant-appellee Caterpillar, Inc.

Hall & Evans; Christopher Cipoletti, Colorado Springs, for defendants-appellees Paccar, Inc. and Paccar Leasing Corp.

Anderson, Campbell & Laugesen, P.C., Jack Kent Anderson, Denver, for defendants-appellees Lease Midwest, Inc. and Colorado Kenworth, Inc.

Opinion by Judge ROTHENBERG.

In this personal injury action arising from a gasoline truck explosion, plaintiffs, Larry and Beverly White, appeal the judgment entered in favor of defendants, Caterpillar, Inc. (Caterpillar), Paccar, Inc. (Paccar), Paccar Leasing Corporation (Paccar Leasing), Lease Midwest, Inc. (Lease Midwest), and Colorado Kenworth, Inc. (Kenworth), following a jury trial. We reverse and remand for a new trial as to defendant Paccar, but affirm as to all other defendants.

In 1988, plaintiff Larry White (White) was employed by Harpel Oil as a gas hauler. He drove a Kenworth truck which was manufactured by Paccar and equipped with a diesel engine made by Caterpillar. Harpel Oil leased the truck from Paccar Leasing, Inc., through Lease Midwest. The design specifications for the truck were developed for Harpel Oil by Lease Midwest and Kenworth.

In July 1988, White delivered gasoline to Plains Oil & Gas. Without measuring the level of gasoline already in the storage tank, White began pumping gasoline by inserting the hose into the tank, opening the truck's cargo tank valve, and starting the pump powered by the truck's diesel engine.

After checking the hose connections, White entered the service station, and, while he was inside, the truck's engine started to race. White ran out of the station to the cab of the truck and turned off the ignition. However, the engine did not stop but continued to race as gasoline fumes were pulled through the engine's air intake system. White then noticed that gas was overflowing from the tank. Within seconds, an explosion and fire occurred, and White was severely burned.

White and his wife filed an action against defendants here and others seeking damages on theories of strict liability and negligence. Basically, White claimed the accident was caused by Paccar's design of the truck and engine which created an unreasonable risk of fire in the event of a gasoline spill. He further claimed the failure of all defendants to warn of the dangers associated with engines operated without a safety device known as an air inlet shutoff device (ASD) rendered the engine defective and unreasonably dangerous. Mrs. White sought damages for loss of consortium. Before trial, the Whites settled their claims against Harpel Oil and Plains Oil & Gas.

At trial, plaintiffs presented evidence that the engine overspeed caused an explosion or "backfire" in the engine, igniting the surrounding gas fumes. Plaintiffs claimed that: (1) the explosion could have been prevented by installing an ASD in the engine; (2) defendants were required to warn of the dangers of overspeed and appropriate measures to prevent and respond to it; and (3) a gasoline truck which can explode if exposed to gasoline fumes is unreasonably dangerous.

Briefly stated, defendants argued that: (1) engine overspeed did not cause the fire; (2) White's injuries were caused by his own conduct; and (3) ASDs are unreliable, impractical, dangerous devices because inadvertent actuation can cause loss of steering and braking capabilities and, thus, loss of control of the vehicle on the highway. The jury returned a verdict in favor of all defendants on both the theories of strict liability and negligence.

### I.

In regard to their strict liability theory of recovery, plaintiffs first contend that the trial court improperly instructed the jury regarding their claim of design defect. We agree that the trial court erred in this regard. However, plaintiffs did not assert a design defect by Caterpillar, the manufacturer of the engine, or by the other defendants. Thus, the design defect issue affects only the judgment entered in favor of Paccar on the products liability claim. It does not affect the judgments in favor of defendants Caterpillar, Paccar Leasing, Lease Midwest, Inc., or Kenworth, nor the judgment in favor of Paccar on the negligence theory of recovery.

In a products liability action, a plaintiff must prove that a product is in a "defective condition unreasonably danger-

ous." *See Potthoff v. Alms,* 41 Colo.App. 51, 583 P.2d 309 (1978). A claim of defect can be premised on a design defect, manufacturing defect, or a failure to warn. *See Camacho v. Honda Motor Co.,* 741 P.2d 1240 (Colo.1987).

The courts have adopted two tests in order to determine whether a defective condition is unreasonably dangerous. The first test is the "consumer expectation test" and relies in large part upon Restatement (Second) of Torts § 402(A) comment i (1965). That comment states:

> The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

*See Ortho Pharmaceutical Corp. v. Heath,* 722 P.2d 410 (Colo.1986); *Davis v. Caterpillar Tractor Co.,* 719 P.2d 324 (Colo.App.1985) (discussing Restatement § 402(A) in accident involving tractor without overhead protective structure).

Under the second test, the determination of whether a product is "unreasonably dangerous" is made through a risk-benefit analysis.

■ This test is required "where the unreasonableness of the danger in the design defect and the efficacy of alternative designs in achieving a reasonable degree of safety must be defined by primarily technical, scientific information." *Camacho v. Honda Motor Co., supra,* at 1246–47. *See Ortho Pharmaceutical Corp. v. Heath, supra.* This test has been applied in cases involving products that are complex and largely beyond the knowledge and experience of the ordinary consumer. *See Armentrout v. FMC Corp.,* 842 P.2d 175, 182 (Colo.1992) (crane oiler injured by rotating upper part of a crane had the burden of proving the unreasonable dangerousness of the product "using the risk-benefit analysis"); *Ortho Pharmaceutical Corp. v. Heath, supra* (prescription drugs); *Camacho v. Honda Motor Co., supra* (leg guards on a motorcycle).

At trial, plaintiffs tendered the following instruction which is based upon the risk/benefit test:

> A product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to persons or property which is not outweighed by the benefits to be achieved from such design.

However, the court instructed the jury only on plaintiffs' theory of design defect based upon the "consumer expectation" test. That jury instruction stated:

> A product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to persons or property which would not ordinarily be expected.

■ We agree with the plaintiffs' contention that the tendered instruction based upon the risk/benefit test should have been given.

Here, as in *Camacho,* the key issue was plaintiffs' claim that the engine was unreasonably dangerous when used with combustible materials and that an alternative design existed, *i.e.,* the inclusion of an ASD. And here, as in *Camacho,* the alternative design was defined primarily by technical, scientific information. As our supreme court stated in *Camacho* when it selected the risk/benefit test:

> [M]anufacturers of such complex products as motor vehicles invariably have greater access than do ordinary consumers to the information necessary to reach informed decisions concerning the efficacy of potential safety measures.

*Camacho v. Honda Motor Co., supra,* at 1247.

We see no significant difference between *Camacho* and the instant case. Throughout this trial, the parties made numerous references to plaintiff's main theory of the case which was that the accident probably would not have occurred if the truck engine had been equipped with an ASD. And, plaintiffs presented testimony that, with respect to gasoline haulers such as White, the benefits of ASDs outweigh the risks of the safety device. On the other hand, the defendants disputed the safety of ASDs in general and when used on gas hauling trucks.

Under such circumstances, the instruction given improperly directed the jury to consider whether the product "created a risk of

harm which would not ordinarily have been expected," rather than whether the risks associated with an ASD outweighed its benefits. *See Camacho v. Honda Motor Co.,* *supra.* We do not consider this instructional error harmless, *see Jordan v. Bogner,* 844 P.2d 664 (Colo.1993), especially when considered with the additional error discussed in part II below.

## II.

In regard to an issue that may arise on retrial, we also agree with plaintiffs' contention that the trial court erred in excluding evidence of subsequent remedial measures performed by Paccar. Again, however, the error affects only the products liability judgment entered in favor of Paccar.

■ Trial courts have broad discretion as to the admissibility of evidence and in determining whether the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. *See Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322 (Colo. 1986); *Munson v. Boettcher & Co.,* 832 P.2d 967 (Colo.App.1991).

■ Evidence of subsequent remedial measures is not admissible to prove negligence or culpable conduct. However, such evidence is admissible when it is "offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." CRE 407. *Duggan v. Board of County Commissioners,* 747 P.2d 6 (Colo.App.1987).

■ Plaintiffs assert the trial court erred in granting defendants' motion *in limine* and excluding evidence that, after White's accident, Paccar generated a computer message which now appears in the dealer bulletin. And, when a customer orders a truck designated for the hauling of petroleum or some other hazardous substance, the computer message recommends the use of an ASD on the truck.

Here, certain of the defendants maintained throughout the trial that, although ASDs are standard or optional equipment on many engines used in marine and industrial applications, ASDs create a hazard rather than a safety feature when used on truck engines. Therefore, evidence was presented that ASDs should not be installed on gas hauling trucks.

In light of this defense, plaintiffs' evidence that at least one of the defendants, namely Paccar, had specifically recommended the installation of ASDs on gas hauling trucks directly impeached certain of the defendants' contention that ASDs are unsafe. And, as such, the impeachment evidence fell within one of the exceptions enumerated in CRE 407. *See Martinez v. W.R. Grace Co.,* 782 P.2d 827 (Colo.App.1989); *Rimkus v. Northwest Colorado Ski Corp.,* 706 F.2d 1060 (10th Cir.1983) (evidence of subsequent remedial measures admissible for impeachment).

■ Nor do we agree that the probative value of the evidence was outweighed by the danger of unfair prejudice to Paccar. To the contrary, the exclusion of such evidence here unfairly allowed certain of the defendants to assert that ASDs were unsafe, which benefitted all defendants including Paccar, but did not allow plaintiffs to inform the jury that defendant Paccar takes a contrary position with its customers by recommending ASDs on gas hauling trucks. We note that, in his closing argument, Paccar's counsel specifically discussed the hazard created by an ASD if it inadvertently activated and caused a driver to lose control.

However, a different analysis applies to plaintiffs' next contention that the court similarly erred in excluding evidence of subsequent remedial measures performed by Caterpillar. As to such evidence, the trial court did not err in excluding it.

■ The evidence in question indicated that, after plaintiff's accident, Caterpillar changed its Engine Operation and Maintenance Manual by moving its warning regarding engine overspeed from the end of the section labeled "Fire or Explosion Prevention" to the beginning of that same section. Caterpillar did not change the substance or form of the warning.

To the extent that this evidence was offered to prove negligence or culpable conduct, it was not admissible. CRE 407. Moreover, because the substance and form of

the warning remained the same, but was merely repositioned in the manual, we agree with the trial court that any probative value of the evidence was outweighed by the danger of unfair prejudice. CRE 403.

## III.

Plaintiffs raise a number of allegations of error in regard to jury instructions given and refused. In no instance do we find reversible error. We first consider allegations of error regarding plaintiffs' strict liability claims.

### A. Failure to warn

■ Plaintiffs first assert error in the court's failure to warn instruction. Although a somewhat different instruction may be needed on retrial, we perceive no reversible error in this regard.

■ It is the trial court's obligation to determine, as a matter of law, whether the defendant had a duty to warn the plaintiff. In determining whether a defendant had a duty to warn an ordinary user in the plaintiff's position, the trial court should consider the obviousness of the danger and the efficacy of the proposed warning. If a danger is open and obvious, there is no duty to warn unless there is a substantial likelihood that the proposed warning would have prevented injury to the ordinary user. If the trial court finds the existence of a duty to warn under such circumstances, then a modification of the pattern instruction is appropriate. *Armentrout v. FMC Corp., supra.*

We note that at the time of this trial, the court did not have the benefit of our supreme court's decision in *Armentrout v. FMC Corp., supra,* and the court gave an instruction to the jury identical to *CJI–Civ.3d* 14:20 (1989). That instruction provides:

> If a specific risk of harm would be apparent to an ordinary user from the product itself, a warning of or instructions concerning that specific risk of harm is not required.

Plaintiffs requested the court to modify the instruction to read:

> Moreover, even though a specific risk of harm might be apparent to an ordinary

user from the product itself, a product may nonetheless be defective because of inadequate warnings where there was no information provided as to an available safety device which would have made use of the product safer.

The court rejected plaintiffs' tendered instruction because there was no testimony or argument that the alleged risk of overspeed leading to fire was "open or obvious." Accordingly, no modification in the stock instruction was required. The court found that:

> [The tendered instruction] may be applicable in some other set of circumstances, but not the case I heard.... I agree this is not an open and obvious defense.

Thus, even if we assume that the trial court's instruction was incomplete under *Armentrout,* the error under these circumstances was harmless.

### B. Misuse

■ Next, we reject plaintiffs' contention that the trial court erred in instructing the jury on the defense of misuse.

■ Misuse is a causation concept which excuses the seller of an admittedly defective product from liability when the misuse and not the defect caused the injury. *See States v. R.D. Werner Co.,* 799 P.2d 427 (Colo.App. 1990) (injured person cannot recover if misuse of product is sole cause of damages; if misuse *and* defect cause injury, misuse can constitute comparative fault which reduces recovery under § 13–21–406, C.R.S. (1987 Repl.Vol. 6A)).

■ However, misuse is not a defense if the consumer's misuse can be reasonably anticipated by the manufacturer. *Armentrout v. FMC Corp., supra; Jackson v. Harsco,* 673 P.2d 363 (Colo.1983). An instruction on the misuse defense should be given only if there is sufficient evidence that the defendant could not foresee the possibility of misuse. A misuse instruction is also proper when an individual fails to read or heed a manufacturer's instructions and warnings. *See Peterson v. Parke Davis & Co.,* 705 P.2d 1001 (Colo.App.1985).

As our supreme court noted in *Jackson v. Harsco Corp., supra,* at 367:

> The usual situation in which the [misuse] defense may be asserted is where the product is being used in a way other than that which was intended and which could not reasonably have been anticipated by the manufacturer.

Here, defendants' evidence showed that (1) White's actions in filling the tank resulted in the spilling of hundreds of gallons of gasoline; (2) White's actions in filling the tank and his inattention constituted misuse of the product; (3) White's manner of filling the tank and the overspeeding caused the explosion and fire which injured White; and (4) the defendants had never heard of such a spill, nor was there evidence of any previous spills as large as this one. Accordingly, the defendants contended that they could not have foreseen the possibility of the misuse which allegedly occurred here.

Based upon these facts, we conclude there was sufficient evidence to support defendants' claim of misuse. *See Uptain v. Huntington Lab, Inc., supra* (question of foreseeability of misuse is generally jury determination); *States v. R.D. Werner Co., supra.*

In so ruling, we note the difference between this case and others in which the manufacturer has had prior notice of the misuse. Thus, in *Schmutz v. Bolles,* 800 P.2d 1307 (Colo.1990), there was evidence the manufacturer knew that improper cleaning of its drill could result in malfunction, and also knew that some hospitals improperly cleaned their drills. Likewise, in *Armentrout v. FMC Corp., supra,* the defendant knew that oilers such as plaintiff would be present in the rotating upper part of the crane when it was moving and, therefore, would be subject to severe injury. The evidence here did not show such knowledge of the alleged misuse by the defendants.

Therefore, we conclude the trial court did not err in giving the misuse instruction.

## C. Assumption of risk

Next, we reject plaintiffs' contention that the court erred in giving an assumption of risk instruction.

In strict liability cases, assumption of the risk is a defense that will be successful if defendant can show that the injured user of the product voluntarily and unreasonably proceeded to encounter a known danger arising from the use of defendant's product. *See Kinard v. Coats Co.,* 37 Colo.App. 555, 553 P.2d 835 (1976).

In order to be entitled to an assumption of risk instruction, the defendant must demonstrate that the plaintiff had actual knowledge of the specific danger posed by the defect in design, and not just general knowledge that the product could be dangerous. *Jackson v. Harsco Corp., supra.*

At trial, defendants introduced evidence that White was experienced in hauling gasoline and had observed the operation of an ASD in a previous job when an engine shut down after it began to overspeed. Given this evidence, albeit disputed, the jury could have inferred that he knew of the specific danger associated with overspeed and used the truck with knowledge of that danger.

## D. Component part manufacturer

We also reject plaintiffs' contention that the trial court gave two improper instructions on strict liability regarding a manufacturer of a component part, and also improperly instructed the jury that "where a warning is given, a seller may reasonably assume that it will be read and heeded."

A party is entitled to an instruction on a legal theory when it is supported by some competent evidence. *See Shafer v. Hoffman,* 831 P.2d 897 (Colo.1992).

Here, the instructions correctly stated the law and were based upon evidence introduced at trial. *See Schmutz v. Bolles, supra; Uptain v. Huntington Lab, Inc., supra.* With respect to the liability of a components part manufacturer such as Caterpillar, we view *Shaw v. General Motors Corp.,* 727 P.2d 387 (Colo.App.1986), as dispositive. *See also Bond v. E.I. Du Pont De Nemours & Co.,* — P.2d —— (Colo.App. No. 92CA0624, June 3, 1993) (Component part manufacturer could not be held liable for defects in a final product assembled by another party under

either strict liability or negligence theories.). Accordingly, the court properly instructed the jury.

■ Nor are plaintiffs correct in asserting that Caterpillar may not rely upon *Shaw* on appeal because it did not cross-appeal from the trial court's denial of Caterpillar's motion for directed verdict.

■ The general rule in civil cases is that a party must file a cross-appeal in order for an appellate court to consider an alleged error prejudicial to that party. However, a respondent or appellee such as Caterpillar, may, without filing a cross-appeal, defend the judgment of the trial court on any ground supported by the record, so long as that party's rights would not be increased under the judgment. *Ehrle v. Department of Administration,* 844 P.2d 1267 (Colo.App.1992). That is the situation here.

### IV.

We next consider plaintiffs' contention that the trial court erred in its instructions regarding the negligence claims.

#### A. Intervening cause

■ We agree with plaintiffs' contention that the court erred in instructing the jury on the affirmative defense of intervening cause. However, we conclude that such error does not warrant reversal.

■ Intervening cause is a negligence concept that relieves a defendant from liability if the intervening cause was not reasonably foreseeable. It is not a defense to a strict liability claim. *Kinard v. Coats Co., supra.*

Furthermore, an intervening cause is some action by a third party which relieves the defendant of liability. Thus, it has no applicability to the situation here in which only White's own actions might be found to have been a contributing cause. *See Bradford v. Bendix–Westinghouse Automotive Air Brake Co.,* 33 Colo.App. 99, 517 P.2d 406 (1974).

On remand, the trial court should not give an intervening cause instruction.

#### B. Negligence *per se*

■ We also reject plaintiffs' contention that the trial court erred in instructing the jury on negligence *per se.*

■ To support an instruction on the affirmative defense of negligence *per se,* defendants must show that plaintiff violated a regulation regulating his conduct and that the violation caused plaintiff's injuries. *See Lego v. Schmidt,* 805 P.2d 1119 (Colo.App. 1990).

At trial, defendants claimed White violated 49 C.F.R. § 177.834(i) (1984) which requires that an operator of a hazardous materials carrier be in attendance during unloading operations. The regulation defines "in attendance" as being awake, within 25 feet of the cargo tank, and having an unobstructed view of the cargo tank.

At trial, defendants presented evidence that White violated this regulation when he left the truck and entered the service station while the truck was unloading gasoline. The uncontroverted testimony showed that over 200 gallons of gasoline spilled during the unloading process. Because the record contains evidence from which the jury could have found that White violated the regulation and that such violation caused his injuries, the court did not err in so instructing the jury.

### V.

Plaintiffs also contend that a number of evidentiary rulings by the trial court were erroneous or an abuse of discretion. Again, we perceive no reversible error.

#### A.

■ First, we reject the contention that the trial court abused its discretion in limiting the testimony of plaintiffs' expert witness.

■ The scope of an expert witness' testimony is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *See Cardiel v. Brittian,* 833 P.2d 748 (Colo.1992).

At trial, plaintiffs asked their expert witness to explain how an overspeeding diesel engine could backfire and send a spark or flame out of the engine. Defense counsel objected to this testimony because plaintiff's counsel had prohibited defendants from asking any such questions during the witness' deposition.

We find no abuse of discretion in the trial court's ruling limiting the witness' testimony to that which he testified to at his deposition. *See Locke v. Vanderark,* 843 P.2d 27 (Colo. App.1992) (court properly precluded expert testimony that went beyond the scope of discovery). Obviously, on retrial, the trial court may reconsider this issue.

### B.

■ We also disagree with plaintiffs' contention that the court erred in denying plaintiffs' motion *in limine* seeking to exclude evidence that plaintiff was smoking a cigarette in the service station immediately before the accident. The court allowed this evidence which constituted part of the incident leading up to the fire. We conclude that this evidence was relevant to and probative of plaintiff's lack of vigilance in overseeing the unloading process and to his conduct immediately before the fire. Thus, we find no abuse of discretion in the court's ruling.

### VI.

■ Lastly, we reject plaintiffs' contention that the trial court erred in granting Lease Midwest's motion for directed verdict on the strict liability claim. There is record support for the trial court's ruling that, under these particular circumstances, plaintiffs had no basis for their claim against Lease Midwest for failure to warn about the hazards of operating without an ASD.

The judgment is reversed as to defendant Paccar, and the cause is remanded for a new trial as to the strict liability claim against that defendant. As to all other defendants, the judgment is affirmed.

NEY, J., concurs.

CRISWELL, J., specially concurs.

Judge CRISWELL, specially concurring.

I agree with the result reached by the majority in this case. I also agree with most of the analysis contained in the majority opinion. I write separately, however, because my conclusions with respect to the propriety of the so-called "misuse" instruction differ somewhat from those adopted by the majority.

The genesis of the modern concept of strict liability for defective products is Restatement (Second) of Torts § 402A (1965), the tenets of which were expressly adopted by our supreme court in *Hügel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1976). As originally postulated, a consumer's actions in using a product would normally not constitute a defense to a claim based upon a defect that rendered that product unreasonably dangerous. Restatement, *supra,* comment n at 356; *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978). There were, however, two exceptions to this general rule.

First, if the consumer used the product for a purpose or in a manner that was both unintended by the manufacturer and unforeseeable by it, the manufacturer would not be liable for any injuries resulting from that "misuse." *See* Restatement, *supra,* comment h at 351; *Uptain v. Huntington Lab, Inc.,* 723 P.2d 1322 (Colo.1986).

Second, if the consumer knew of the defect and proceeded unreasonably to use the product in a way in which the danger presented by the defect caused injuries, the consumer would be considered to have assumed the risk. *See Restatement, supra,* comment n at 356. *Cf. Uptain v. Huntington Lab, Inc., supra* (treating use in violation of written instructions to be "misuse," rather than assumption of risk).

These underlying concepts as to the defenses available in a products liability case, however, have, in my opinion, undergone a fundamental change as a result of the General Assembly's adoption of § 13–21–406, C.R.S. (1987 Repl.Vol. 6A). Under that statute, while a consumer's culpable actions will not bar his or her recovery (assuming that such actions were not the *sole* cause of the injuries), the damages recoverable must be

"diminished in proportion to the amount of causal fault attributed to the person suffering the harm."

Under this statute, the term "fault" has been construed to include misuse, *States v. R.D. Werner Co.*, 799 P.2d 427 (Colo.App. 1990), as well as a "broad range of culpable behavior including, but not limited to, negligence." *Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470, 1477 (10th Cir.1990).

This being the case, it is no longer necessary, in my opinion, to decide whether a consumer's actions would constitute "misuse" under the Restatement or prior jurisprudence such as *Uptain, supra*, or *Armentrout v. FMC Corp.*, 842 P.2d 175 (Colo.1992). Indeed, a reasonable argument could be made that it is no longer necessary to give any special instruction on misuse. If *either* misuse *or* any other act of negligence by the consumer is the *sole* cause of his or her injuries and the alleged defect did not contribute to those injuries in any manner, a verdict for the defendant is appropriate. *See States v. R.D. Werner Co., supra.*

Here, the jury found that it was plaintiff's actions and not any product defect that caused his injuries. Hence, whether those actions constituted misuse as that concept has been previously developed or some other form of culpable misconduct is irrelevant.

For these reasons, I would not decide the question whether plaintiff's actions constituted misuse, and I would direct the trial court upon remand to consider whether any special instruction on this concept should be given.