Colorado Court of Appeals Opinions || September 10, 2015


Colorado Court of Appeals -- September 10, 2015
2015 COA 124. No. 14CA0273. Walker v. Ford Motor Company.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 124

 
 



 Court of Appeals No. 14CA0273
 Boulder County District Court No. 11CV912
 Honorable Maria E. Berkenkotter, Judge


 Forrest Walker,

 Plaintiff-Appellee,

 v.

 Ford Motor Company,

 Defendant-Appellant.


 JUDGMENT REVERSED AND CASE
 REMANDED WITH DIRECTIONS

 Division IV
 Opinion by JUDGE TERRY
 Graham, J., concurs
 Webb, J., specially concurs

 Announced September 10, 2015


 Purvis Gray, LLP, John A. Purvis, Michael J. Thomson, Boulder, Colorado, for Plaintiff-Appellee

 Wheeler Trigg OâDonnell, LLP, Edward C. Stewart, Jessica G. Scott, Theresa R. Wardon, Denver, Colorado; Donohue Brown Mathewson Smyth LLC, Mark H. Boyle, Chicago, Illinois, for Defendant-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  In this products liability action based on strict liability and negligence, defendant, Ford Motor Company, appeals the trial courtâs judgment entered on a jury verdict in favor of plaintiff, Forrest Walker. Walker claimed to have sustained a traumatic brain injury and soft tissue neck injuries as a result of a car accident, in part because the driverâs seat in his 1998 Ford Explorer was defectively designed.

 Â¶2Â Â Â Â Â Â Â Â  The main issue on appeal is whether the trial courtâs instruction to the jury in accordance with CJI-Civ. 4th 14:3 (2015), which discusses the âconsumer expectationâ test, is correct. We are reluctant to conclude that a trial court errs where it gives an instruction that complies with the Colorado Jury Instructions. See Fishman v. Kotts, 179 P.3d 232, 235 (Colo. App. 2007) (âWhen instructing a jury in a civil case, the trial court shall generally use those instructions contained in the Colorado Jury Instructions (CJI-Civ.) that apply to the evidence under the prevailing law.â (citing C.R.C.P. 51.1(1)). But if such an instruction misstates the law and the resulting error was not harmless, we are compelled to reverse. See Fed. Ins. Co. v. Pub. Serv. Co., 194 Colo. 107, 110, 570 P.2d 239, 241 (1977) (Despite the hard work done by a scholarly committee to cause the Civil Jury Instructions to reflect the prevailing law, â[t]he trial court still has the duty to examine the prevailing law to determine whether a CJI instruction is applicable to the facts of the particular case and states the prevailing law.â); see also C.A.R. 35(e) (An âappellate court shall disregard any error or defect not affecting the substantial rights of the parties.â); C.R.C.P. 61 (âThe court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.â).

 Â¶3Â Â Â Â Â Â Â Â  We conclude that the first sentence of CJI-Civ. 4th 14:3 misapplies Colorado law, and that the error in providing that instruction to the jury was not harmless. We therefore reverse and remand for a new trial. Because of our conclusion, we also necessarily disagree with the decision of a division of this court in Biosera, Inc. v. Forma Scientific, Inc., 941 P.2d 284 (Colo. App. 1996), affâd on other grounds, 960 P.2d 108 (Colo. 1998), to the extent it indicated that an instruction on the consumer expectation test can be given in addition to an instruction on the risk-benefit test.

 I. Background

 Â¶4Â Â Â Â Â Â Â Â  While driving his 1998 Ford Explorer, Walker was rear-ended
 by another vehicle, and his car seat yielded rearward. Walker suffered head and neck injuries, and claimed that they resulted from hitting his head on the rear seat when his seat deformed. After Walker settled his claims against the other driver, he proceeded to trial against Ford on the theory that the driverâs seat was defective.

 Â¶5Â Â Â Â Â Â Â Â  Walkerâs complaint alleged the following with respect to strict products liability:

 The Explorer was defective and unreasonably dangerous . . . in at least the following respects:

 (a) The lever-activated recliner incorporated in the driverâs seat of the Explorer did not adequately and sufficiently secure the seat back so as to prevent against its disengaging and causing the seat back to drop suddenly and violently backward and downward toward the vehicle floor.

 (b) The configuration of the seat and the lever-activated recliner permitted the seat belt to catch or hook onto the recliner lever and disengage the recliner mechanism, causing sudden and violent disengagement and sudden and violent drop of the seat back to the rear and downwards.

 Â¶6Â Â Â Â Â Â Â Â  Walker also asserted a negligence claim, alleging that Ford failed to exercise reasonable care in the design, manufacture, distribution, and sale of the vehicle, so as to avoid and prevent any unreasonable risk of injury or harm to persons who would be affected by such risk. He presented evidence at trial aimed at substantiating these allegations.

 Â¶7Â Â Â Â Â Â Â Â  Before trial, Walker did not specifically assert a negligence claim based on Fordâs duty to warn of a defect. However, at trial, Ford sought, and the trial court gave, a jury instruction on duty to warn of a product defect.

 Â¶8Â Â Â Â Â Â Â Â  After the close of Walkerâs evidence, Ford moved for a directed verdict, arguing that Walker had failed to prove a design defect and had failed to prove that any defect caused him to incur injuries over and above those he would have suffered in the absence of the alleged defect. Ford also argued that Walker presented no evidence supporting a claim of negligent failure to warn. The trial court denied Fordâs motion.

 Â¶9Â Â Â Â Â Â Â Â  The jury returned a verdict in Walkerâs favor, both on the claim for sale of a defective product and on the negligence claim. Ford filed a motion for a new trial or for judgment notwithstandingÂ the verdict. The motion was deemed denied by the trial courtâs failure to rule on the motion within the time provided in C.R.C.P. 59(j).

 II. Consumer Expectation Test versus Risk-Benefit Test

 Â¶10Â Â Â Â Â Â Â Â  Relying on Camacho v. Honda Motor Co., 741 P.2d 1240 (Colo. 1987), and Ortho Pharmaceutical Corp. v. Heath, 722 P.2d 410 (Colo. 1986), overruled in part by Armentrout v. FMC Corp., 842 P.2d 175 (Colo. 1992), Ford argues that it was reversible error for the trial court to give instruction number 18. That instruction is based on CJI-Civ. 4th 14:3, and says:

 A product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to persons or property that would not ordinarily be expected or is not outweighed by the benefits to be achieved from such a design.

 A product is defective in its design, even [if] it is manufactured and performs exactly as intended, if any aspect of its design makes the product unreasonably dangerous.

 (Emphasis added.)

 Â¶11Â Â Â Â Â Â Â Â  The phrase âcreates a risk of harm to persons or property that would not ordinarily be expectedâ in the instruction embodies a concept known as the consumer expectation test, derived fromÂ Restatement (Second) of Torts Â§ 402A cmt. i (1965). White v. Caterpillar, Inc., 867 P.2d 100, 105 (Colo. App. 1993).

 Â¶12Â Â Â Â Â Â Â Â  The phrase âis not outweighed by the benefits to be achieved from such a designâ references the ârisk-benefitâ test, first adopted in Colorado in Ortho, 722 P.2d at 414. The use of the word âorâ between the two phrases allows the jury to find for the plaintiff if either of the two tests is met.

 Â¶13Â Â Â Â Â Â Â Â  In Biosera, a division of this court determined that the two tests are not mutually exclusive and that it was not error for the trial court there to give instructions on both the risk-benefit test and the consumer expectation test. Ford argues that Biosera was wrongly decided.

 Â¶14Â Â Â Â Â Â Â Â  As we explain more fully below, we disagree with Fordâs contention that the jury cannot be instructed at all on the consumer expectation test, because we conclude that that test is part of the applicable risk-benefit test. But we agree with Ford that the jury should not have been instructed separately on the consumer expectation test in instruction number 18. Because that instruction is derived from CJI-Civ. 4th 14:3, we conclude that the pattern jury instruction is incorrectly formulated to the extent itÂ incorporates the consumer expectation test. We also disagree with Biosera to the extent it endorsed inclusion of the consumer expectation test in what is now CJI-Civ. 4th 14:3.

 A. The Ortho/Armentrout Seven-Factor Test Incorporates the Consumer Expectation Test

 Â¶15Â Â Â Â Â Â Â Â  We start by reviewing the supreme courtâs decision in Ortho. There, the court stated:

 We believe the [risk-benefit] test . . . is the appropriate standard here. The dangerousness of [the drug at issue] is defined primarily by technical, scientific information. The consumer expectation test fails to address adequately this aspect of the problem. The risk-benefit test focuses on the practical policy issues characteristic of a product such as [the drug at issue], which is alleged to be unreasonably dangerous despite being manufactured in precisely the form intended.

 . . . .

 [The instruction given by the trial court stated only] the âconsumer expectation test,â a test not suitable in prescription drug cases when the actionable product is alleged to be unsafe by design notwithstanding its production in precisely the manner intended. The failure of the trial court to give an instruction on the risk-benefit test was reversible error.Â 

 722 P.2d at 414-15.Â 

 Â¶16Â Â Â Â Â Â Â Â  The court in Ortho recited and appeared to endorse a seven-factor test, id. at 414, that was derived from John W. Wade, On the Nature of Strict Tort Liability for Products, 44 Miss. L.J. 825, 837-38 (1973). The supreme court later expressly adopted this test in Camacho, 741 P.2d at 1247-48, and Armentrout, 842 P.2d at 184. As set forth in Armentrout, the test is as follows:

 In order to determine whether the risks outweigh the benefits of the product design, the jury must consider different interests, represented by certain factors. In Ortho, we listed the following factors which could be considered in determining whether the risks outweigh the benefits:

 (1) The usefulness and desirability of the product â its utility to the user and to the public as a whole.

 (2) The safety aspects of the product â the likelihood that it will cause injury and the probable seriousness of the injury.

 (3) The availability of the substitute product which would meet the same need and not be as unsafe.

 (4) The manufacturerâs ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.

 (5) The userâs ability to avoid danger by the exercise of care in the use of the product.

 (6) The userâs anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of theÂ product, or of the existence of suitable warnings or instructions.

 (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

 Armentrout, 842 P.2d at 183-84 (emphasis added) (citing Ortho, 722 P.2d at 414).

 Â¶17Â Â Â Â Â Â Â Â  Here, in addition to jury instruction number 18 based on CJI-Civ. 4th 14:3, the jury was given instruction number 19, which contained this seven-factor test.

 Â¶18Â Â Â Â Â Â Â Â  According to Ford, the supreme courtâs pronouncements in Ortho and Camacho demonstrate that the consumer expectation test may no longer be used by fact finders to determine whether a product is defective. Although we agree that the first sentence of instruction number 18 should not have been given, and that reversal is therefore required, we disagree that the consumer expectation test has been completely superseded.

 Â¶19Â Â Â Â Â Â Â Â  We reach this conclusion by noting that the consumer expectation test is incorporated as factor number 6 of the risk-benefit test adopted in Ortho. Factor number 6 requires the jury to consider â[t]he userâs anticipated awareness of the dangers inherentÂ in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.â Id. at 184. This is merely a rephrasing of the consumer expectation test.

 Â¶20Â Â Â Â Â Â Â Â  In Camacho, the supreme court repeated Orthoâs seven-factor risk-benefit test, 741 P.2d at 1245, and said, â[t]he factors enumerated in Ortho are applicable to the determination of what constitutes a product that is in a defective unreasonably dangerous condition.â Id. at 1248.

 Â¶21Â Â Â Â Â Â Â Â  Camacho also dictates that a multi-factor risk-benefit test be used in product liability cases, id. at 1245 (âAny test . . . to determine whether a particular product is or is not actionable must consider several factors.â (emphasis added)), and indicates that the test to be used is the Ortho test, id. at 1248 (âThe factors enumerated in Ortho are applicable to the determination of what constitutes a product that is in a defective unreasonably dangerous condition.â). Cf. Armentrout, 842 P.2d at 184 (âDepending on the circumstances of each case, flexibility is necessary to decide which factors are to be applied, and the list of factors mentioned in Ortho and Camacho may be expanded or contracted as needed.â).

 Â¶22Â Â Â Â Â Â Â Â  Thus, Camacho indicates that the consumer expectation test survived Ortho, but only as one factor among the many listed in the risk-benefit test. See Camacho, 741 P.2d at 1246-47 (âtotalâ and âexclusiveâ reliance on consumer expectation test is inappropriate; consumer expectation test âdoes not provide a satisfactory test for determining whether particular products are in a defective condition unreasonably dangerous to the user or consumer,â and âdiverts the appropriate focusâ away from âthe nature of the product under all relevant circumstances rather than upon the conduct of either the consumer or the manufacturerâ).

 Â¶23Â Â Â Â Â Â Â Â  Our review of post-Camacho supreme court decisions confirms that none of them discusses the consumer expectation test, except to the extent that it is included in factor number 6 of the risk-benefit test. See Forma Scientific, 960 P.2d at 112; Barton v. Adams Rental, Inc., 938 P.2d 532 (Colo. 1997); Fibreboard Corp. v. Fenton, 845 P.2d 1168 (Colo. 1993); Armentrout, 842 P.2d 175; Schmutz v. Bolles, 800 P.2d 1307, 1316 (Colo. 1990).

 Â¶24Â Â Â Â Â Â Â Â  Other than Biosera, White, 867 P.2d at 105-06, decided by a division of this court, is the only post-Camacho Colorado state appellate decision that discusses both tests. In White, the divisionÂ said that the risk-benefit test, and not the consumer expectation test, should have been given where the key issue at trial was the plaintiffâs claim that an engine was unreasonably dangerous when used with combustible materials and that an alternative design existed. Id. The division did not appear to notice that factor number 6 of the risk-benefit test incorporates the consumer expectation test, and it certainly did not indicate that factor number 6 of the risk-benefit instruction was improperly given.

 Â¶25Â Â Â Â Â Â Â Â  We recognize that certain federal court decisions have discussed the applicability of the consumer expectation and risk-benefit tests to Colorado products liability claims brought in federal court. See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1296 (10th Cir. 2010); Montag v. Honda Motor Co., 75 F.3d 1414, 1419 (10th Cir. 1996). However, we are not bound by decisions of federal courts applying Colorado law. Monez v. Reinertson, 140 P.3d 242, 245 (Colo. App. 2006). In any event, the federal courts did not discuss the inclusion of the consumer expectation test in factor number 6 of the risk-benefit test, as we do here.Â 

 B. The Trial Court Erred by Instructing the Jury Separately on the
 Consumer Expectation Test

 Â¶26Â Â Â Â Â Â Â Â  We conclude that, because the consumer expectation test is included in the risk-benefit test instruction that was given to the jury as instruction number 19, the trial court erred by giving a separate instruction that also included the consumer expectation test. This is so because the combined instructions allowed the jury to consider the consumer expectation test twice: once in the risk-benefit test in instruction number 18, and again in instruction number 19.

 Â¶27Â Â Â Â Â Â Â Â  Moreover, the first sentence of instruction number 18 improperly allowed the jury to find for plaintiff if either the risk-benefit test or the consumer expectation test was met. Following CJI-Civ. 4th 14:3, the first sentence of instruction number 18 said, â[a] product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to persons or property that would not ordinarily be expected or is not outweighed by the benefits to be achieved from such design.â (Emphasis added.)

 Â¶28Â Â Â Â Â Â Â Â  Because, as we have seen, the risk-benefit test already incorporates the consumer expectation test, it was reversible errorÂ to give the first sentence of instruction number 18, essentially allowing the jury to consider the consumer expectation test twice.

 Â¶29Â Â Â Â Â Â Â Â  For this reason, we disagree with the divisionâs decision in Biosera to the extent it endorsed the improper language of CJI-Civ. 4th 14:3 and can be read to allow a trial court to instruct on both the consumer expectation and risk-benefit tests. See 941 P.2d at 287 (concluding that consumer expectation and risk-benefit tests âare not mutually exclusiveâ and that a trial court âshould review each [test] to determine if it is an appropriate standard for judging the dangerous nature of the product at issueâ).

 C. The Error Requires Reversal

 Â¶30Â Â Â Â Â Â Â Â  For two reasons, this instructional error was not harmless.

 Â¶31Â Â Â Â Â Â Â Â  First, the error allowed the jury to consider the consumer expectation test as an alternative to the risk-benefit test. The consumer expectation test is not an alternative test to the risk-benefit test, but is a sub-part of that test. Thus, the jury was improperly allowed to find for plaintiff even if it failed to consider the other parts of the risk-benefit test.

 Â¶32Â Â Â Â Â Â Â Â  Contrary to Camacho, instruction number 18 allowed the jury to find for plaintiff if it found either that the product was defectiveÂ based on the consumer expectation test or if the risk of the product was not outweighed by the benefits to be achieved from the design. Cf. White, 867 P.2d at 105-06 (error in instructing on consumer expectation test was not harmless).

 Â¶33Â Â Â Â Â Â Â Â  Second, the error allowed the jury to consider the consumer expectation test twice, once in instruction number 18 and again in instruction number 19. Part of plaintiffâs theory at trial was based on the consumer expectation test â namely, that the plaintiff could recover if the jury found that an ordinary consumer would not expect a car seat to behave as his car seat did. Therefore, allowing the jury to consider the consumer expectation test twice improperly emphasized that test to plaintiffâs advantage.

 Â¶34Â Â Â Â Â Â Â Â  Because this error was not harmless, we reverse and remand to the trial court for a new trial, and direct the court to omit the words âwould not ordinarily be expected orâ from the first sentence of CJI-Civ. 4th 14:3 when it instructs the jury on the elements of a products liability claim. Accordingly, that sentence should read: âA product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to persons or property that is not outweighed by the benefits to be achieved from such a design.â

 III. Other Issues

 Â¶35Â Â Â Â Â Â Â Â  Because they may arise on remand, we consider only the following additional issues. As to the remaining issues raised on appeal, we do not expect them to arise on retrial, and therefore we do not address them.

 A. Defect and Causation Evidence was Sufficient

 Â¶36Â Â Â Â Â Â Â Â  Ford contends that Walkerâs defect and causation evidence was insufficient. More specifically, Ford argues that the trial court should have granted its motion for judgment notwithstanding the verdict because Walker did not prove that an alternative seat design would have provided better protection and that Fordâs defective car seat was the cause of the injury. We disagree with these contentions.

 1. Standard of Review and Legal Authority

 Â¶37Â Â Â Â Â Â Â Â  A judgment notwithstanding the verdict is appropriate where the evidence is insufficient as a matter of law or there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 59(e)(1)-(2). We review de novo a grant or denial of a motion for judgment notwithstanding theÂ verdict. Cardenas v. Fin. Indem. Co., 254 P.3d 1164, 1167 (Colo. App. 2011).

 Â¶38Â Â Â Â Â Â Â Â  In determining a motion for judgment notwithstanding the verdict where the factual basis for the verdict must be analyzed, we review the record in favor of the nonmoving party. Durdin v. Cheyenne Mountain Bank, 98 P.3d 899, 903 (Colo. App. 2004). Such a motion may be granted only if the evidence, taken in the light most favorable to the opposing party and drawing every reasonable inference which may legitimately be drawn in favor of that party, would not support a verdict by a reasonable jury in the opposing partyâs favor. Id.; see also C.R.C.P. 59(e); Nelson v. Hammon, 802 P.2d 452, 454 (Colo. 1990). In applying this standard, the court cannot consider the weight of the evidence or the credibility of the witnesses. See Durdin, 98 P.3d at 903.

 2. Discussion

 Â¶39Â Â Â Â Â Â Â Â  The evidence allowed the jury to reasonably conclude that an alternative car seat design would have provided better protection, and that Fordâs car seat was defective and was the cause of Walkerâs injuries. Assuming that similar evidence is presented on

 Â¶40Â Â Â Â Â Â Â Â  retrial, we are not persuaded that Ford would be entitled toÂ judgment as a matter of law.

 Â¶41Â Â Â Â Â Â Â Â  Walker presented evidence that an independent medical examiner diagnosed him with a closed head injury, vertigo, and a ligamentous injury. Paul Lewis, a biomechanical engineer and expert on injury causation, testified that, if Walkerâs seat back had remained upright in the accident and the seat had had an adequate headrest, Walker would not have sustained any of his more significant injuries. Lewis explained that the injuries occurred due to lack of sufficient protection or lack of âcoupling,â and explained âcouplingâ as âbasically trying to tie the body to the vehicle so that [one] can effectively ride down the crash forces.â

 Â¶42Â Â Â Â Â Â Â Â  Walker also presented testimony of Lewis and engineer Ken Brown to show that an alternative design could have provided better protection than the seat in Walkerâs Explorer.

 Â¶43Â Â Â Â Â Â Â Â  Lewis testified that the design of the 1996 Chrysler Sebring seat was a better alternative than the one in Walkerâs 1998 Ford Explorer. Lewis also discussed the high-retention seat designed in the 1990s by Fordâs expert witness Dr. David Viano. According to Lewis, Vianoâs design had a stiffer seat and better head rest than the one in the 1998 Ford Explorer and was designed to prevent theÂ kind of extension injuries that were suffered by Walker. Brown testified that when Walkerâs Explorer went into production, both Volvo and Chrysler Sebring cars had seats with taller and more forward head restraints, and the Sebring also had an integrated belt restraint to go along with the seat. He also opined that the seat in the 1998 Ford Explorer was not of adequate strength.

 Â¶44Â Â Â Â Â Â Â Â  Ford presented evidence to contradict the testimony of Lewis and Brown. The jury was free to credit the testimony of either sideâs experts and was not required, as a matter of law, to conclude that there was no alternative design available at the time that would have provided better protection than did the Explorerâs car seat.

 Â¶45Â Â Â Â Â Â Â Â  The jury could have concluded from Lewisâs and Brownâs testimony that an alternative design was available that could have prevented Walkerâs injuries, and that the Explorerâs car seat was defectively designed. The evidence also allowed the jury to determine that the car seat was the cause of Walkerâs injuries. Because there was competent evidence to support the verdict, Ford was not entitled to judgment notwithstanding the verdict. See Graphic Directions, Inc. v. Bush, 862 P.2d 1020, 1024 (Colo. App. 1993).

 B. Other Incident Evidence

 Â¶46Â Â Â Â Â Â Â Â  Ford next contends that the trial court erred by permitting Walker to introduce evidence of other incidents involving Ford vehicles. Ford argues that by doing so the trial court abused its discretion because evidence of the other incidents did not meet the substantial similarity test and thereby prejudiced Ford. We are not persuaded.

 1. Standard of Review and Legal Authority

 Â¶47Â Â Â Â Â Â Â Â  We review a district courtâs evidentiary ruling for an abuse of discretion. Wal-Mart Stores, Inc. v. Crossgrove, 2012 CO 31, Â¶7; Hock v. New York Life Ins. Co., 876 P.2d 1242, 1251 (Colo. 1994). In determining whether a court abused its discretion in admitting evidence, we accord the evidence its maximum probative value as weighed against its minimum prejudicial effect. City of Englewood v. Denver Waste Transfer, L.L.C., 55 P.3d 191, 200 (Colo. App. 2002).

 Â¶48Â Â Â Â Â Â Â Â  Prior incident evidence may be admitted if it is offered to establish a material fact, is logically relevant, contains no inference of the opposing partyâs bad character, and does not result in unfairÂ prejudice. Vista Resorts Inc. v. Goodyear Tire & Rubber Co., 117 P.3d 60, 66 (Colo. App. 2004).

 Â¶49Â Â Â Â Â Â Â Â  Evidence of similar accidents, occurrences, or injuries may be offered to refute testimony that a given product was designed without safety hazards. Koehn v. R.D. Werner Co., 809 P.2d 1045, 1048 (Colo. App. 1990). Evidence of prior similar incidents is relevant to show that the manufacturer had notice of an actual or potential product defect. Vista Resorts, 117 P.3d at 67. Before such evidence is admitted, the proponent of the evidence must make an initial showing that the other incident occurred under the same or substantially similar circumstances as those involved in the case to be tried. Koehn, 809 P.2d at 1048. Differences between the circumstances surrounding prior incidents and those in the case to be tried bear on the weight to be given such evidence, and not on its admissibility. Vista Resorts, 117 P.3d at 67.

 2. Discussion

 Â¶50Â Â Â Â Â Â Â Â  Fordâs briefs give too little detail about any asserted dissimilarities between the Walker accident and the other incidents for us to conclude that the trial court abused its discretion by admitting the other incident evidence. See People v. Diefenderfer,Â 784 P.2d 741, 752 (Colo. 1989) (it is the duty of counsel for the appealing party to inform a reviewing court as to the specific errors relied on, as well as the grounds, supporting facts, and authorities therefor).

 Â¶51Â Â Â Â Â Â Â Â  Our review of the record shows that the trial court placed appropriate limits on the presentation of evidence of other incidents involving Ford vehicles, and did not abuse its discretion in allowing evidence of the four incidents to be admitted. The four vehicles in those incidents were all Ford Explorers, and all appear to have involved the same or similar seat design as the seat in Walkerâs Explorer, meaning they were designed to perform in the same manner as Walkerâs seat. Though Ford points to differences in the types of accidents and injuries in those other incidents, those differences went only to the weight to be given to the evidence, and not to its admissibility.

 Â¶52Â Â Â Â Â Â Â Â  Moreover, testimony about the other incidents was extremely brief. We foresee no adverse effect on the fairness of the trial if similarly brief testimony were to be offered on retrial.

 IV. Conclusion

 Â¶53Â Â Â Â Â Â Â Â  The judgment is reversed and the case is remanded to the trial court for a new trial in accordance with the opinions expressed herein.

 JUDGE GRAHAM concurs.

 JUDGE WEBB specially concurs.

 
 Â 

 JUDGE WEBB specially concurring.

 Â¶54Â Â Â Â Â Â Â Â  While I agree that the verdict must be set aside, I write separately to offer a narrower explanation for this result, which could influence the retrial. In my view, the majority correctly concludes that

 the trial court erred by giving a separate instruction that also included the consumer expectation test. This is so because the combined instructions allowed the jury to consider the consumer expectation test twice: once in the risk-benefit test in instruction number 18, and again in instruction number 19.

 Still, I cannot join in the majorityâs further conclusion that âCamacho indicates that the consumer expectation test survived Ortho, but only as one factor among the many listed in the risk-benefit test.â Although this latter conclusion may be a permissible inference from these cases, it is hardly compelling.

 Â¶55Â Â Â Â Â Â Â Â  I draw on the same background as the majority.

 
 Two tests have been developed to determine whether a productâs design makes it defective and unreasonably dangerous: the consumer expectation test and the risk-benefit test. Ortho Pharm. Corp. v. Health, 722 P.2d 410, 413 (Colo.Â 1986), overruled in part by Armentrout v. FMC Corp., 842 P.2d 175, 183 (Colo. 1992).



 
 Under the consumer expectation test, a product is unreasonably dangerous because of a defect in its design if it creates a risk of harm that is greater than what an ordinary consumer would expect. See Camacho v. Honda Motor Co., Ltd., 741 P.2d 1240, 1245 (Colo. 1987).
 Â 

 
 Under the risk-benefit test, a product becomes unreasonably dangerous when the degree of danger inherent in the design outweighs the benefits of the product design. See Armentrout, 842 P.2d at 183-84. To determine whether the risks outweigh the benefits of the product design, the jury must consider the seven-factor test set out by the majority.



 But unlike the majority, I am unwilling to conclude that reference to consumer expectation in the sixth factor precludes a plaintiff from electing to proceed solely on a consumer expectation theory, as embodied in CJI-Civ. 4th 14:3 (2015), rather than on a risk-benefit theory.

 Â¶56Â Â Â Â Â Â Â Â  In Camacho, 741 P.2d at 1245, the supreme court endorsed the concept of consumer expectation test: â[a] consumer is justifiedÂ in expecting that a product placed in the stream of commerce is reasonably safe for its intended use, and when a product is not reasonably safe, a products liability action may be maintained.â True, the supreme court also said that consumer expectation âdoes not provide a satisfactory test for determining whether particular products are in a defective condition unreasonably dangerous to the user or consumer.â Id. at 1246 (emphasis added). But the court went on to explain:

 Total reliance upon the hypothetical ordinary consumerâs contemplation of an obvious danger diverts the appropriate focus and may thereby result in a finding that a product is not defective even though the product may easily have been designed to be much safer at little added expense and no impairment of utility.

 Id. (emphasis added). This language tells me the court was indicating that in certain cases, the risk-benefit test may be needed in addition to the consumer expectation test, to avoid an incorrect jury finding that a product was not defective.

 Â¶57Â Â Â Â Â Â Â Â  vContrary to the majority, I do not read the supreme courtâs earlier decision in Ortho â a case involving the manufacture of prescription pharmaceuticals â as requiring a different conclusion. Unlike mechanical devices with which consumers are familiar and understand the manner in which they should perform, how prescription drugs work is likely a complete mystery to the ordinary consumer. Such a consumer has no knowledge as to how the chemical components of a drug should interact in the human body. Thus, the supreme court in Ortho made a rational distinction between consumer products and prescription drugs. And this distinction suggests that only the risk-benefit test should be applied â to the exclusion of the consumer expectation test â in prescription drug cases.

 Â¶58Â Â Â Â Â Â Â Â  Nothing in Ortho suggests that the risk-benefit test must be applied to mechanical devices in common usage by the public, such as cars and car seats. Indeed, because Camacho was decided after Ortho, I infer that the supreme court would allow the consumer expectation test to be applied here, where the design of a car seat is in issue. Had the Camacho court intended Ortho to be a stake through the heart of a stand-alone consumer expectation test, it could have said so specifically. It did not.

 Â¶59Â Â Â Â Â Â Â Â  But the Camacho court was not faced with the argument that instructing on both tests could prejudice a defendant. As to thatÂ issue, I disagree with the majorityâs first prejudice explanation but fully endorse its second.

 Â¶60Â Â Â Â Â Â Â Â  On retrial, the jury would have had common experience with car seats and would have formed expectations as consumers about how car seats should perform, even if they would not necessarily know exactly how the seats would function in a collision. True, the seatâs design also reflected complex engineering principles. Because both ordinary consumer expectations and complex engineering could support a juryâs determination that the seat was a defective product, in my view plaintiff should be allowed to choose between instructing the jury on either the consumer expectation test or the risk-benefit test.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || September 10, 2015


Back