Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 13, 2017

**2017 CO 102**

**No. 15SC899, <u>Walker v. Ford Motor Co.</u>—Torts—Products Liability—Design Defect.**

In this case, the supreme court considers whether a trial court errs when it gives a jury instruction that allows the jury to apply either the consumer expectation test or the risk-benefit test to determine whether a driver's car seat was unreasonably dangerous due to a design defect. The court concludes that the risk-benefit test is the appropriate test to assess whether a product was unreasonably dangerous due to a design defect when, as here, the dangerousness of the design is "defined primarily by technical, scientific information." <u>Ortho Pharm. Corp. v. Heath</u>, 722 P.2d 410, 414 (Colo. 1986), <u>overruled on other grounds by</u> <u>Armentrout v. FMC Corp.</u>, 842 P.2d 175, 183 (Colo. 1992). The court further concludes that the jury's separate finding of negligence did not render the instructional error harmless in this case.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 102

**Supreme Court Case No. 15SC899**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA273

**Petitioner:**

Forrest Walker,

v.

**Respondent:**

Ford Motor Company.

## Judgment Affirmed
*en banc*
November 13, 2017

**Attorneys for Petitioner:**
Purvis Gray Thomson, LLP
John A. Purvis
Michael J. Thomson
  *Boulder, Colorado*

**Attorneys for Respondent:**
Wheeler Trigg O'Donnell LLP
Edward C. Stewart
Jessica G. Scott
Theresa R. Wardon
  *Denver, Colorado*

**Attorneys for Amicus Curiae Alliance of Automobile Manufacturers:**
Shook, Hardy & Bacon LLP
S. Kirk Ingebretsen
  *Denver, Colorado*

Shook, Hardy & Bacon LLP
Victor E. Schwartz
Phil S. Goldberg
Cary Silverman
  *Washington, District of Columbia*

**Attorneys for Amici Curiae Colorado Civil Justice League and American Tort Reform Association:**
Taylor Anderson LLP
Lee Mickus
Margaret Boehmer
  *Denver, Colorado*

**Attorneys for Amicus Curiae The Colorado Trial Lawyers Association:**
Burg Simpson Eldredge Hersh & Jardine, P.C.
Brian K. Matise
David K. TeSelle
Nelson P. Boyle
  *Englewood, Colorado*

**Attorneys for Amicus Curiae Product Liability Advisory Council, Inc.:**
Wells, Anderson & Race, LLC
Mary A. Wells
L. Michael Brooks, Jr.
  *Denver, Colorado*

**CHIEF JUSTICE RICE** delivered the Opinion of the Court.

¶1     In this products liability case, we consider whether the trial court erred when it gave a jury instruction that allowed the jury to apply either the consumer expectation test or the risk-benefit test to determine whether a driver's car seat was unreasonably dangerous due to a design defect.  The court of appeals concluded that the trial court did err by instructing the jury separately on the consumer expectation test, because the test already comprises an element of the risk-benefit test.  Walker v. Ford Motor Co., 2015 COA 124, ¶¶ 26–28, __ P.3d __.

¶2     We now affirm the court of appeals, albeit on different grounds.  This court determined more than thirty years ago that the risk-benefit test is the appropriate test to assess whether a product is unreasonably dangerous due to a design defect where the dangerousness of the design is "defined primarily by technical, scientific information." Ortho Pharm. Corp. v. Heath, 722 P.2d 410, 414 (Colo. 1986), overruled on other grounds by Armentrout v. FMC Corp., 842 P.2d 175, 183 (Colo. 1992).  We have found the consumer expectation test, by contrast, "not suitable" in such a case.  Id. at 415. Here, the jury was tasked with determining whether a car seat was unreasonably dangerous due to a design defect—a determination that, as evidenced by the extensive expert testimony at trial, required consideration of technical, scientific information. Thus, the proper test under which to assess the design's dangerousness was the risk-benefit test,[1] not the consumer expectation test.  We therefore hold that the trial court erred by instructing the jury on both tests, thereby allowing it to base its verdict

_____

[1] This court has used the terms "risk-benefit test" and "risk-benefit analysis" interchangeably.  See, e.g., Armentrout, 842 P.2d at 183; Ortho, 722 P.2d at 413.

3

on the consumer expectation test alone.  We hold further that the jury's separate finding of negligence did not render the instructional error harmless.  Accordingly, we affirm the court of appeals on different grounds and remand the case for further proceedings consistent with this opinion.

## I.

¶3     Forrest Walker was rear-ended while driving his 1998 Ford Explorer in Boulder, Colorado.  Upon impact, Walker's car accelerated forward and his car seat yielded rearward.  Walker asserts that he sustained head and neck injuries in the crash, and he sued the other driver and Ford Motor Company ("Ford") to recover for those injuries.  Walker settled with the other driver, but he proceeded to trial against Ford on theories of strict liability and negligence.  He claimed that the seat was defective in its design, and that Ford was negligent for failing to take reasonable care in the design and manufacture of its product so as to prevent an unreasonable risk of harm.

¶4     Walker's case was tried to a jury in 2013.  During trial, Ford and Walker offered extensive testimony from biomechanical and seat-design experts on the design characteristics of the car seat.  Ford's experts explained the concept behind yielding seats, saying they absorb energy that would otherwise impact the driver in a crash, and testified to the benefits of such seats in collisions like Walker's.  Ford also presented data from testing that it claims proved the benefits of Ford's seat design, showed that the seat performed better in rear-end collision testing than its 1998 competitors, and demonstrated that the crash forces Walker experienced did not exceed injury thresholds.  Walker's experts testified that, although car seats should have some yield,

4

the seat in the 1998 Ford Explorer needed to be stronger, and that it was technologically and economically feasible in 1998 to build a stronger seat with a better head restraint. Walker's experts also testified that the seat was not state-of-the-art in 1998 and gave examples of feasible design alternatives. During closing arguments, Walker's attorney appealed to the jury to use "common sense" and suggested it could conclude the seat was unreasonably dangerous by "look[ing] at what happened" to the seat, "without having to decide who's right among the experts on the liability issues."

¶5     At the end of trial, as relevant here, Ford asked that the jury be instructed to assess the dangerousness of the car seat using the risk-benefit test. Walker requested the consumer expectation test. The trial court gave the jury an instruction, based on the Colorado pattern jury instruction at the time, allowing it to apply either test. Specifically, the instruction stated:

> A product is unreasonably dangerous because of a defect in its design if it creates a risk of harm to persons or property that would not ordinarily be expected or is not outweighed by the benefits to be achieved from such design.
>
> A product is defective in its design, even if it is manufactured and performs exactly as intended, if any aspect of its design makes the product unreasonably dangerous.

Jury Instr. No. 18; see also CJI-Civ. 4th 14:3 (2016).[2] The court also gave the jury a separate instruction listing seven non-exclusive factors it could consider in "weighing

---

[2] This instruction has since been updated, and the design-defect instruction now omits the phrase "would not ordinarily be expected or." See CJI-Civ. 4th 14:3 (2017); see also CJI-Civ. 4th 14:3, Note on Use 3 (2016).

the risks versus the benefits of a product design." Jury Instr. No. 19.[3] Of these seven factors, "factor six" stated that the jury could consider "the user's anticipated awareness of dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions." Id. The jury ultimately found for Walker on both his strict-liability and negligence claims, and it awarded him nearly $3 million plus interest. After Ford's motion for a new trial or judgment notwithstanding the verdict was denied when the trial court did not rule on it during the allotted time, Ford appealed the verdict.

---

[3] Jury Instruction 19 states:

> In weighing the risks versus the benefits of a product design, you may consider among other things:
>
> 1. the usefulness and desirability of the product—its utility to the user and to the public as a whole;
>
> 2. the safety aspects of the product—the likelihood that it will cause injury and the probable seriousness of the injury;
>
> 3. the availability of the substitute product which would meet the same need and not be as unsafe;
>
> 4. the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility;
>
> 5. the user's ability to avoid danger by the exercise of due care in the use of the product;
>
> 6. the user's anticipated awareness of dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and
>
> 7. the feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

¶6    The court of appeals reversed the jury's verdict.  <u>Walker</u>, ¶ 3.  The court held that the trial court erred by instructing the jury separately on the consumer expectation test, because the test is included as an element of the risk-benefit test.  <u>Id.</u> at ¶¶ 14, 26.  Specifically, the court summarily concluded that factor six of the risk-benefit test "is merely a rephrasing of the consumer expectation test."  <u>Id.</u> at ¶ 19.  The court went on to hold that the instructional error was not harmless, because it allowed the jury to consider the consumer expectation test twice and to find for Walker even if it failed to consider the other elements of the risk-benefit test.  <u>Id.</u> at ¶¶ 30–33.  The court thus reversed the verdict and remanded the case for a new trial, with directions for the trial court to omit the separate consumer expectation test from the jury instructions.  <u>Id.</u> at ¶ 34.

¶7    Walker petitioned this court for review and we granted certiorari.[4]  We now affirm the court of appeals, albeit on different grounds, and remand the case for further proceedings consistent with this opinion.

_____

[4] We granted certiorari to consider the following issues:
1. Whether the court of appeals erred in concluding that the "risk-benefit" test for strict product liability incorporates the "consumer expectation" test, such that the trial court reversibly erred by separately instructing the jury on the "consumer expectation" test.
2. Whether the jury's separate finding of negligence renders harmless any instructional error regarding strict liability.
3. Whether the court of appeals' decision, if correct, applies retroactively.

## II.

¶8    First, we consider whether the trial court erred by instructing the jury on the consumer expectation test, and we conclude that it did.  We then address whether the jury's separate finding of negligence rendered the instructional error harmless, and we conclude that it did not.

### A.

¶9    We review de novo whether a jury instruction states the law correctly, and we review the trial court's decision to give a particular jury instruction for an abuse of discretion.  Day v. Johnson, 255 P.3d 1064, 1067 (Colo. 2011).

¶10    This court has looked to the doctrine of strict products liability as set forth in section 402A of the Restatement (Second) of Torts.  Camacho v. Honda Motor Co., 741 P.2d 1240, 1244 (Colo. 1987).  Under section 402A, a manufacturer may be held strictly liable for harm caused by "any product in a defective condition unreasonably dangerous to the user or consumer."  Restatement (Second) of Torts § 402A (Am. Law. Inst. 1965); see also Camacho, 741 P.2d at 1244.  A product may be in such a condition due to a manufacturing defect, which causes the product to fail to conform to the manufacturer's specifications, or due to a failure to warn or a design defect that renders the product unreasonably dangerous despite the fact that it was manufactured exactly as intended.  Camacho, 741 P.2d at 1247.  Additionally, a motor-vehicle manufacturer may be held liable for injuries sustained in a motor-vehicle accident "where a manufacturing or design defect, though not the cause of the accident, caused or enhanced the injuries."  Id. at 1242–43.  The plaintiff must prove that a product is

8

defective and unreasonably dangerous in order to establish liability under section 402A. See Fibreboard Corp. v. Fenton, 845 P.2d 1168, 1175 (Colo. 1993) (citing Camacho, 741 P.2d at 1245).

¶11 In making the determination as to whether a product's design is unreasonably dangerous, we have recognized two tests: the consumer expectation test and the risk-benefit analysis. Ortho, 722 P.2d at 413. The consumer expectation test asks whether a product performed as safely as an ordinary consumer would expect, and it derives largely from comment i to section 402A. Id. Comment i states that a product must be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer" and provides examples, including whiskey containing fuel oil, and butter contaminated with poisonous fish oil. § 402A cmt. i.

¶12 The risk-benefit test asks a different question: whether the benefits of a particular design outweigh the risks of harm it presents to consumers. See Ortho, 722 P.2d at 413; Armentrout, 842 P.2d at 182–84 (stating the test and overruling Ortho to the extent it placed the burden of proof on the manufacturer). This court first applied the risk-benefit test to assess whether a product's design was defective in Ortho, 722 P.2d at 413–14, in which we also listed seven factors that may be considered in weighing the risks and benefits of a design, id. at 414 (citing John W. Wade, On the Nature of Strict

9

Tort Liability for Products, 44 Miss. L.J. 825, 837–38 (1973)).[5]  We have since clarified

that those seven factors, while illustrative of considerations that may be helpful in

determining whether a design is defective, are not exclusive and need not be strictly

applied in every case.  Armentrout, 842 P.2d at 184.  For example, in Armentrout, we

stated that the existence of a feasible design alternative may be a factor in the analysis of

the dangerousness of a product design.[6]  Id. at 185 & n.11.  Noting that the Armentrouts

had presented evidence of a feasible design alternative, we declared in that case that

such evidence would be considered on retrial.  See id. at 185.

---

[5] The seven factors discussed in Ortho were:

> (1) The usefulness and desirability of the product—its utility to the user and to the public as a whole.
>
> (2) The safety aspects of the product—the likelihood that it will cause injury and the probable seriousness of the injury.
>
> (3) The availability of the substitute product which would meet the same need and not be as unsafe.
>
> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
>
> (5) The user's ability to avoid danger by the exercise of care in the use of the product.
>
> (6) The user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.
>
> (7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

Ortho, 722 P.2d at 414.

[6] We mentioned evidence of feasible design alternatives in Ortho and Camacho as well, but we did not explicitly discuss such evidence as a risk-benefit factor.  See Ortho, 722 P.2d at 416; Camacho, 741 P.2d at 1249.

¶13    In this case, Walker and Ford agree that Instruction 18 allowed the jury to use either the consumer expectation test or the risk-benefit test to determine whether the car seat was unreasonably dangerous. The consumer expectation test was encompassed in the phrase "creates a risk of harm to persons or property that would not ordinarily be expected," and the risk-benefit test in the phrase "a risk of harm . . . not outweighed by the benefits to be achieved from such design." Jury Instr. No. 18. The trial court also instructed the jury that it could consider and weigh, "among other things," the seven factors enumerated in Ortho. Jury Instr. No. 19; Ortho, 722 P.2d at 414. Walker claims that Instruction 18 stated Colorado law correctly, and the jury's verdict should stand. We disagree.

¶14    This court has stated repeatedly that the risk-benefit test, not the consumer expectation test, is the proper test to use in assessing whether a product like the car seat at issue here is unreasonably dangerous due to a design defect. In Ortho, this court considered both tests in the context of a claim that a prescription drug was unreasonably dangerous and defective in design. 722 P.2d at 413–14. We concluded that the risk-benefit test was the "appropriate standard" under which to "measure the reasonableness of [the] danger" presented by the drug. Id. In reaching our conclusion, we noted that the dangerousness of the drug was "defined primarily by technical, scientific information." Id. at 414. "The consumer expectation test," we stated, "fails to address adequately [that] aspect of the problem," id., and is "a test not suitable in prescription drug cases when the actionable product is alleged to be unsafe by design notwithstanding its production in precisely the manner intended," id. at 415. We found

11

the risk-benefit test, by contrast, to properly "focus[] on the practical policy issues characteristic" of such a product. Id. at 414. Accordingly, we held that the trial court had erred by failing to instruct on the risk-benefit test. Id. at 415.

¶15 We reiterated our conclusions regarding the two tests in Camacho. There, the underlying issue was whether a motorcycle was defectively designed and unreasonably dangerous because it was not equipped with crash bars to protect a rider's legs. 741 P.2d at 1241–42. We held that the lower courts had erred by using a consumer expectations standard to assess the motorcycle's dangerousness, id. at 1242, reasoning that "the consumer contemplation concept embodied in comment i [to section 402A] . . . does not provide a satisfactory test for determining whether particular products are in a defective condition unreasonably dangerous to the user or consumer," id. at 1246. We also pointed to this court's recognition in Ortho that "exclusive reliance upon consumer expectations" is "particularly inappropriate" where both the dangerousness of the design and "the efficacy of alternative designs . . . must be defined primarily by technical, scientific information." Id. at 1246–47.

¶16 Notably, we expounded upon the reasons for using the risk-benefit test, rather than the consumer expectation test, in design-defect cases involving technical, complex product designs. We noted that products-liability law has developed in part to "encourage manufacturers to use information gleaned from testing, inspection and data analysis" to help avoid product accidents. Id. at 1247. Using the risk-benefit test to assess the dangerousness of products helps further this objective, as it directs fact-finders to consider the manufacturer's ability to minimize or eliminate risks and the

12

effect such an alteration would have on the product's utility, other safety aspects, or affordability. See, e.g., id. at 1247–48 (listing risk-benefit factors). Moreover, "manufacturers of such complex products as motor vehicles invariably have greater access than do ordinary consumers to the information necessary to reach informed decisions concerning the efficacy of potential safety measures." Id. at 1247. Finding that the motorcycle's status required "interpretation of mechanical engineering data derived from research and testing—interpretation which necessarily includes the application of scientific and technical principles," id. at 1248, we remanded the case for further proceedings using the proper risk-benefit standard, id. at 1242, 1249.

¶17 Turning to the case before us, we conclude that the trial court erred by instructing the jury on the consumer expectation test. This case, like those outlined above, concerns an alleged design defect, and the dangerousness of the car seat design is "defined primarily by technical, scientific information." Ortho, 722 P.2d at 414. Indeed, like the motorcycle without crash bars in Camacho, the dangerousness of the car seat design required the "interpretation of mechanical engineering data derived from research and testing." Camacho, 741 P.2d at 1248. The parties provided the jury with extensive expert testimony regarding testing data, seat rigidity, restraint systems, risks and benefits, and feasible design alternatives. Applying such evidence "necessarily includes the application of scientific and technical principles." Id. Therefore, the proper test for the jury to use in its determination of the dangerousness of the seat design was the risk-benefit test.

13

¶18     We are not persuaded by Walker's argument that there is no inconsistency in applying and instructing a jury on both tests, as was done here.  As developed above, our precedent holds the consumer expectation test to be improper in design-defect cases involving scientific, technical information.   Here, Instruction 18 allowed the jury to apply either the consumer expectation test or the risk-benefit test.  Jury Instr. No. 18 (stating that the jury could find the seat unreasonably dangerous based on a risk that "would not ordinarily be expected or is not outweighed by the benefits" of the design (emphasis added)).    Therefore, the instruction authorized the jury to apply the consumer expectation test alone.  Counsel for Walker stressed this fact to the jury during closing arguments, urging the jury to use "common sense" and suggesting it could conclude that the seat was unreasonably dangerous by "look[ing] at what happened" to the seat, "without having to decide who's right among the experts on the liability issues."  Instruction 18 was contrary to our precedent, and the trial court erred by giving it.[7]

¶19     Because we find that Instruction 18 was inconsistent with our precedent, we need not reach the issue upon which the court of appeals rested its opinion, namely, whether the consumer expectation test is subsumed into factor six of the risk-benefit test.  Instruction 19, which listed the seven factors from our Ortho decision, has not been challenged in this case, and may be used on remand.

---

[7] That the instruction was a pattern instruction does not save it from a finding of error, as pattern instructions are "not law, not authoritative, and not binding," and they "do not trump case law."  Krueger v. Ary, 205 P.3d 1150, 1154 (Colo. 2009).

**B.**

Walker argues that, even if Instruction 18 was erroneous, the jury's separate finding of negligence renders the error harmless.

This court will deem an error harmless, and thus will not reverse a judgment, unless the error resulted in substantial prejudice to a party. See Armentrout, 842 P.2d at 186; accord C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties."). With respect to jury instructions, "the giving of an erroneous instruction constitutes reversible error once prejudice is shown." Mile Hi Concrete, Inc. v. Matz, 842 P.2d 198, 204 (Colo. 1992).

Walker asserts that his negligence claim is an alternative basis for the jury's verdict. Emphasizing that the jury found for him in both strict liability and negligence, he argues that the negligence finding renders harmless any error in the trial court's strict liability instructions. Walker argues further that the jury was properly instructed on the elements of negligence and on the separate nature of his claims, and we must assume the jury followed instructions. He thus contends that the court of appeals erred in finding reversible error, and the jury's verdict should stand. We disagree.

A manufacturer is not negligent for designing a reasonably safe product. Accordingly, regardless of whether a design-defect claim is based in strict liability or negligence, in order to properly return a verdict for the plaintiff, a fact-finder must determine that the product at issue is unreasonably dangerous. See, e.g., Camacho, 741 P.2d at 1245 ("[W]hen a product is not reasonably safe a products liability action may be maintained"); Mile Hi, 842 P.2d at 205 ("Regardless of whether a product liability action

15

is grounded in negligence or strict liability, a plaintiff must prove that the product was defective."). For all of the reasons laid out in this opinion, such a determination in this case should have been made using the risk-benefit test.

¶24 Moreover, in a design-defect case such as this, the risk-benefit test essentially subsumes the issue of negligence. See, e.g., Keller v. Koca, 111 P.3d 445, 447–48 (Colo. 2005) (explaining that a determination of negligence requires consideration of multiple factors, including "the risk involved, the foreseeability of the injury weighed against the social utility of the actor's conduct," and the burden of guarding against harm). Reasonableness is a negligence concept. See Camacho, 741 P.2d at 1245. Thus, as this court has recognized, the risk-benefit test "includes language which is rooted in negligence." Fibreboard Corp., 845 P.2d at 1173.

¶25 Here, because of the instructional error, the jury was permitted to rely upon an improper standard in making its negligence determination. The trial court instructed the jury that, in order to find for Walker on his negligence claim, it must find that Ford "was negligent by failing to exercise reasonable care to prevent the driver seat and restraint system in the 1998 Ford Explorer from creating an unreasonable risk of harm." Jury Instr. No. 23. "[U]nreasonable risk of harm," however, was not separately defined. And when the jury asked the court what it meant by "reasonably dangerous," the court referred the jury to Instruction 18—the instruction containing both the risk-benefit and consumer expectation tests. Trial Tr. 2:14–25, March 21, 2013. Consequently, the jury was permitted to use a consumer expectation standard to assess the reasonableness of the risk presented by the seat design and find Ford negligent, even if—indeed,

16

especially if—it followed the trial court's instructions. Accordingly, we cannot conclude that the trial court's error in giving Instruction 18 was harmless.[8]

### III.

¶26    For the reasons stated above, we affirm the court of appeals on different grounds, and remand the case for further proceedings consistent with this opinion.

---

[8] Our holding today applies this court's longstanding precedent. We therefore reject Walker's argument that, if we were to find reversible error, we should apply our decision today only prospectively.